# 25-10297

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

**Latrisha Winder, Individually, as next friend of J.W., a minor, and as personal representative of the Estate of Stephen Wayne Winder, Deceased; Lily Winder; Stephen Tyler Winder; Emma Winder, and Lou Anne Phillips**,

Plaintiffs-Appellants

v.

**United States of America**,

Defendant-Appellee

---

On Appeal from the United States District Court
for the Northern District of Texas, Northern Division
District Court No. 7:24-CV-83-O

---

## BRIEF FOR APPELLEE

---

NANCY E. LARSON
ACTING UNITED STATES ATTORNEY

Andrea Hyatt
Assistant United States Attorney
Texas Bar No. 24007419
Burnett Plaza, Suite 1700
801 Cherry Street, Unit #4
Fort Worth, Texas 76102-6882
Telephone: 817.252.5200
Fax: 817.252.5458
Andrea.Hyatt@usdoj.gov

Attorneys for the Appellee

## STATEMENT REGARDING ORAL ARGUMENT

This is an appeal from the district court's Rule 12 dismissal for lack of jurisdiction of Plaintiffs' negligence cause of action asserted against the federal government under the under the Federal Tort Claims Act, 28 U.S.C. § 2674. The government respectfully submits that this appeal can be decided on the papers without the need for oral argument.

# TABLE OF CONTENTS

Statement Regarding Oral Argument ............................................................ i

Table of Authorities ................................................................................ iv

Statement of Jurisdiction .......................................................................... 1

Statement of the Issues ............................................................................ 2

Statement of the Case ............................................................................... 4

   1.  Steve threatens suicide after discovering texts between Latrisha and her ex-husband .............................................................................. 4

   2.  Latrisha seeks spiritual advice from an Army Chaplain. ..................... 5

   3.  The welfare check ends with a fatal shooting. ................................... 7

   4.  Plaintiffs file suit. ....................................................................... 8

   5.  The United States moves to dismiss Plaintiffs' claims. ........................ 8

   6.  The district court dismisses the case. ............................................... 9

Standard of Review ................................................................................. 10

Summary of the Argument ....................................................................... 10

Argument and Authorities ........................................................................ 14

   1.  The ecclesiastical-abstention doctrine deprived the district court of jurisdiction. ............................................................................ 14

       A.  The ecclesiastical-abstention doctrine protects the religious freedoms guaranteed by the First Amendment. ........................ 15

       B.  The district court properly found that the ecclesiastical-abstention doctrine applied here. ............................................... 17

       C.  Plaintiffs' three attempts to evade the ecclesiastical-abstention doctrine fail. ............................................................ 20

2.   The *Feres* doctrine also independently deprived the district court of jurisdiction. ................................................................. 26

    A.   The district court correctly found that *Feres* barred Latrisha's claim. .................................................................... 27

    B.   The district court correctly found that *Feres* barred the family members' claims. ..................................................... 27

    C.   Plaintiffs' attempt to evade the *Feres* bar fails. ............................ 30

3.   Alternately, Plaintiffs' complaint fails to state a claim. ...................... 35

    A.   Plaintiffs' complaint fails to plead facts to support the first element of a negligence claim—a legal duty. ............................. 35

    B.   The complaint fails to plead facts to support the second element of a negligence claim—a breach. ................................. 39

Conclusion ............................................................................ 41

Certificate of Service ..............................................................  42

Certificate of Compliance .......................................................... 42

# TABLE OF AUTHORITIES

## CASES

*Brown v. United States,*
    462 F.3d 609 (6th Cir. 2006) ............................................................... 33

*Brown v. USA Taekwondo,*
    483 P.3d 159 (Cal. 2021) ..................................................................... 37

*Chandler v. United States,*
    713 F. App'x 251 (5th Cir. 2017) ......................................................... 27

*Costley v. United States,*
    181 F.2d 723 (1950) ............................................................................. 32

*Crosstex N. Tex. Pipeline, L.P. v. Gardiner,*
    505 S.W.3d 580 (Tex. 2016) ................................................................ 39

*Del Rio v. United States,*
    833 F.3d 282 (11th Cir. 1987) .............................................................. 33

*Dickerson v. United States,*
    280 F.3d 470, 473 (5th Cir. 2002) ........................................................ 33

*Feres v. United States,*
    340 U.S. 135 (1950) .........................................................................26-27

*Gaspard v. United States,*
    713 F.2d 1097 (5th Cir. 1983) ................................................ 28, 30, 34

*In re Alief Vietnamese Alliance Church,*
    576 S.W.3d 421 (Tex. App.—Houston [14th Dist.]
    2019, orig. proceeding) ........................................................................ 16

*In re Lubbock,*
    624 S.W.3d 506 (Tex. 2021) ...........................................................15, 16

*Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church,*
    344 U.S. 94 (1952) ............................................................................... 15

*Lombard v. United States*,
690 F.2d 215 (D.C. Cir. 1982) ........................................................ 29

*Malone v. City of Fort Worth*,
2014 WL 5781001 (N.D. Tex. Nov. 6, 2014) .................................... 36

*McRaney v. N. Am. Mission Bd. of the S. Baptist Convention, Inc.*,
966 F.3d 346 (5th Cir. 2020) ............................................10, 22, 24, 25

*Miller v. United States*,
42 F.3d 297 (5th Cir 1995) ............................................................... 34

*Morris v. Thompson*,
852 F.3d 416 (5th Cir. 2017) ........................................................... 27

*Mosby v. Kleinguetl*,
2021 WL 824779, (Tex. App.—Houston [14th Dist.]
Mar. 4, 2021, no pet.) ...................................................................... 16

*Ortiz v. United States ex rel. Evans Army Cmty. Hosp.*,
786 F.3d 817 (10th Cir. 2015) ....................................................29, 30

*Paterson v. Weinberger*,
644 F.2d 521 (5th Cir. 1981) ........................................................... 22

*Ramming v. United States*,
281 F.3d 158 (5th Cir. 2001) ........................................................... 22

*Read v. United States*,
536 F. App'x 470 (5th Cir. 2013) ..................................................... 30

*Sanders v. Casa View Baptist Church*,
134 F.3d 331 (5th Cir. 1998) ...........................................15, 22, 24, 25

*Scales v. United States*,
685 F.2d 970 (5th Cir. 1982) ......................................................32, 33

*Serbian E. Orthodox Diocese v. Milivojevich*,
426 U.S. 696 (1976) ........................................................................ 15

*Shannon v. Mem'l Drive Presbyterian Church*,
476 S.W.3d 612 (Tex. App.—Houston [14th Dist.] 2015, pet. denied). 16

*Stencel Aero Eng'g Corp. v. United States*,
   431 U.S. 666 (1977) ............................................................... 28, 34, 35

*Tex. Home. Mgmt., Inc. v. Peavy*,
   89 S.W.3d 30 (Tex. 2008)...................................................... 36, 37, 39

*Thapar v. Zezulka*,
   994 S.W.2d 635 (Tex. 1999) ......................................................35, 38

*United States v. Brown*,
   348 U.S. 110 (1954) ........................................................................ 35

*United States v. Johnson*,
   481 U.S. 681 (1987) ........................................................................ 28

*Van Horn v. Chambers*,
   970 S.W.2d 542 (Tex. 1998) .......................................................... 38

*Westbrook v. Penley*,
   231 S.W.3d 389 (Tex. 2007) .................................................. 16, 22, 23

*Winder v. Gallardo*,
   118 F.4th 638 (5th Cir. 2024)........................................................... 10

## STATUTES

28 U.S.C. § 1291 ..................................................................................... 1

Federal Tort Claims Act, 28 U.S.C. § 2674............................................. i, 1, 4

Free Exercise Clause of the First Amendment .................................... 2, 14, 15

## RULES

Federal Rule of Civil Procedure 12 .............................................................. i, 1

Federal Rule of Civil Procedure 12 (b)(1) ........................................ 1,8, 22, 27

Federal Rule of Civil Procedure 12(b)(6) .............................................3, 8, 10

**REGULATIONS**

U.S. Dep't of the Army, Reg. 165-1,
    Army Chaplain Corps Activities (2015)................................6, 17, 21, 25

**OTHER AUTHORITIES**

Texas Civil Pattern Jury Charges § 2.1 (2024)............................................. 39

## <u>STATEMENT OF JURISDICTION</u>

This is an appeal from the district court's Rule 12 dismissal for lack of jurisdiction of Plaintiffs' negligence cause of action, which they asserted against the federal government under the under the Federal Tort Claims Act, 28 U.S.C. § 2674. (ROA.1, 212.) The district court determined that it lacked subject-matter jurisdiction over Plaintiffs' claims. (ROA.194, 210, 212.) Therefore, the district court dismissed the case in its entirety, under Rule 12(b)(1), by final judgment entered January 17, 2025. (ROA.212.) Plaintiffs timely filed a notice of appeal on February 12, 2025 (within the 60 days allowed for appeals involving the federal government). (ROA.213.) This Court has jurisdiction under 28 U.S.C. § 1291.

**STATEMENT OF THE ISSUES**

In this case, seven plaintiffs—Army Specialist Latrisha Winder, her four children, her mother, and her deceased husband's estate—sought damages arising from the shooting death of Latrisha's husband by a Young County Deputy Sheriff, under a theory that an Army Chaplain negligently counseled Winder about how to address her husband's despondent and suicidal actions in the lead-up to the shooting. Plaintiffs' appeal from the district court's jurisdictional dismissal of their suit presents the following two principal issues, each of which is an independent basis for affirmance:

1.  Under the ecclesiastical-abstention doctrine, Texas courts have rejected claims for clergy malpractice because such claims would require courts to review religious matters in violation of the Free Exercise Clause of the First Amendment. Here, Plaintiffs allege that an Army Chaplain was negligent when he provided spiritual counsel to Plaintiff Latrisha Winder about how to respond to her husband's suicide threat. Did the district court error in holding that this case is ecclesiastical in nature and not simply a civil dispute in which a religious official happens to be involved?

2.  The *Feres* doctrine preserves the United States' sovereign immunity from all suits based on injuries incident to military service, including derivative suits brought by a service member's relatives. Here, all three criteria for

applying the doctrine were met: at the time of her alleged injury, Latrisha was (1) on active duty; (2) on an Army base; and (3) receiving counselling services provided to her as a benefit of military service. Did the district court err in applying the *Feres* doctrine?

In addition, although the district court did not need to reach the government's Rule 12(b)(6) argument, the following issue could be reached if necessary:

3. Under Texas law, there is generally no duty to control the actions of a third party and no breach when the defendant did only what a person of ordinary prudence would have done in similar circumstances. In their complaint, Plaintiffs seek to hold the United States liable for the actions of a third party (the Deputy who fatally shot Steve) on a theory that the Army Chaplain pressured Latrisha into calling local law enforcement to ask them to conduct a welfare check on her spouse, who was admittedly mentally ill, drunk, emotionally disturbed, potentially suicidal, and armed. Can the district court's judgment also be upheld on the alternate ground that the complaint failed to adequately plead facts giving rise to either a legal duty or a breach, as necessary for a negligence claim?

## <u>STATEMENT OF THE CASE</u>[1]

Through this civil action under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2674, seven plaintiffs (Army Specialist Latrisha Winder, her four children, her mother, and her deceased husband's estate) seek damages from the federal government for the shooting death of Latrisha's husband, Steve Winder by a Sheriff's Deputy. (ROA.6.)

**1.  Steve threatens suicide after discovering texts between Latrisha and her ex-husband.**

On a Sunday afternoon in June 2021, Latrisha was on active duty in the U.S. Army at an Army base in Virginia (Fort Lee). (ROA.9 at ¶ 12; ROA.92; ROA.94.) She had been stationed there for training that would last approximately eleven weeks. (ROA.92.)

Meanwhile, back at her home in Texas, her husband, Steve, and their children were swimming in the family pool. (ROA.3 at ¶ 10; ROA.9 at ¶ 13.) Steve, who had been drinking, accidentally got his cell phone wet when he got in the pool. (ROA.9 at ¶ 13.) While searching for a cell phone that worked, he found and charged an old cell phone that belonged to Latrisha. (ROA.9 at ¶ 13.)

---

[1] Unless otherwise noted, this background information is taken from the complaint (ROA.6-37) and assumed to be true only for purposes of this brief. In addition, for ease of reference, this brief adopts Plaintiffs' convention of referring to Latrisha Winder, Steve Winder, and Lou Anne Phillips by their first names.

On her old phone, he discovered Facebook messages between Latrisha and her ex-husband, in which her ex-husband expressed a desire to get back together. (ROA.9 at ¶ 13.) Although Latrisha had declined her ex-husband's overture, she had not told Steve about it. (ROA.9 at ¶ 13.) Steve, visibly upset, took his wife's phone next door to the home where his mother-in-law, Lou Anne Phillips, lived and showed the messages to her. (ROA.9-10 at ¶ 14.) Lou Anne agreed that Latrisha should not have been messaging with her ex-husband, but she pointed out that the texts did not indicate Latrisha desired to get back together with her ex-husband. (ROA.9-10 at ¶ 14.) Although Steve agreed and returned to his house, he did not drop the matter. (ROA.9-10 at ¶ 14-15.) Instead, he called his wife and accused her of infidelity. (ROA.10 at ¶ 15.) Then, in the early evening, he texted her photos of himself "with a handgun under his chin and to his head and stating he could not bear it anymore." (ROA.15 at ¶ 23.) Plaintiffs' complaint describes Steve, at this point, as "mentally ill, drunk, emotionally disturbed, potentially suicidal, and armed." (ROA.32-33 at ¶ 70.)

## 2.    Latrisha seeks spiritual advice from an Army Chaplain.

Distraught, Latrisha went to her sergeant and asked to speak with an Army Chaplain. (ROA.15 at ¶ 23.) The Army provides chaplains as a benefit of military service—to minister to its soldiers' spiritual needs—as part of the

Army Chaplain Corps, which "is a special branch of the Army whose mission is to provide for the comprehensive religious support to the Army across the spectrum of operations." (ROA.10 at ¶ 17.) Army regulations require that Army Chaplains be fully credentialed ministers of a religious organization and be endorsed by that religious organization.[2] As Army Chaplains, they serve as "representatives of their distinctive religious group."[3] And they remain accountable to their religious organization "in all matters pertaining to the continued maintenance of their credentials while they perform religious functions in the Army."[4] "A chaplain cannot continue to function as a chaplain . . . if he or she loses professional religious credentials or ecclesiastical endorsement."[5]

Army Chaplain Johnson-Glassel came to Latrisha's barracks, where they met privately in a meeting room. (ROA.15 at ¶ 24.) He "counseled her spiritually" about how to deal with Steve's suicide threat. (*Id.*) As part of his advice, he urged her to call local law-enforcement and request a welfare check on her husband. (ROA.5 at ¶¶ 24, 25.) They discussed the idea on a call with

---

[2] U.S. Dep't of the Army, Reg. 165-1, Army Chaplain Corps Activities §§ 3-1(a), 6-14(a)-(b) (2015). Plaintiffs cited these Army regulations in their complaint. (*See, e.g.,* ROA.6-7 at ¶ 20.)

[3] *Id.* § 6-14(a).

[4] *Id.* § 6-14(b).

[5] *Id.* § 6-14(b).

Latrisha's mother, Lou Anne. (ROA.5 at ¶¶ 24, 25.) On the call, both Latrisha and her mother told the chaplain they did not think it was a good idea. (ROA.5 at ¶¶ 24, 25.) He allegedly responded that he would call law enforcement if Latrisha did not. (ROA.15 at ¶ 25.) Feeling coerced, Latrisha called the Young County Sheriff's Office and requested a welfare check on her husband. (ROA.16 at ¶ 25.)

**3.    The welfare check ends with a fatal shooting.**

The Young County Sheriff Office dispatched two deputies to the Winder home. (ROA.17-18 at ¶ 30.) Deputy Gallardo arrived first. (ROA.18 at ¶ 31.) As he opened the front door and made a small step across the doorway, Lou Anne saw Steve walk toward the doorway with his gun. (ROA.20 at ¶ 41; ROA.21 at ¶ 41.) She told Steve to "put it up," and then told Deputy Gallardo "He's got a gun." (ROA.22 at ¶ 44.) After Lou Anne said, "He's got a gun," Deputy Gallardo loudly ordered Steve: "Put it down, man. Put it down." (ROA.17-18 at ¶ 44.) After yelling "put it down" the second time, Deputy Gallardo fired one shot from his handgun, which hit Steve and proved to be fatal. (ROA.23 at ¶ 45.)

**4.    Plaintiffs file suit.**

Plaintiffs filed suit under the FTCA, seeking to hold the United States liable for Deputy Gallardo's shooting and killing Steve. (ROA.1.) Their novel theory of recovery is that the Army Chaplain acted negligently when, in response to Latrisha's request for advice on how to respond to her husband's suicidal texts, he allegedly coerced her to into asking local law-enforcement to perform a welfare check on Steve by telling her that, if she did not call local law-enforcement, he would. (ROA.1, 31-35.)

**5.    The United States moves to dismiss Plaintiffs' claims.**

The United States filed a pre-answer motion to dismiss, in which it asserted that the complaint should be dismissed for both: (1) lack of jurisdiction (under Rule 12(b)(1)); and (2) failure to state a claim upon which relief can be granted (under Rule 12(b)(6)). (ROA.53-86.)

On the jurisdictional issue, the motion explained that jurisdiction was lacking because the particular claim Plaintiffs asserted—for clergy malpractice—has been repeatedly rejected because it would require unconstitutional review of ecclesiastical matters. Additionally, the motion noted as an independent jurisdictional bar that the *Feres* doctrine bars lawsuits based on injuries incident to military service, such as this one.

The motion to dismiss also explained that the complaint failed to state a claim for negligence. (ROA 82-86.)

## 6.    The district court dismisses the case.

After receiving Plaintiffs' response and the United States' reply, the district court issued an eighteen-page opinion in which it granted the motion to dismiss. (ROA.194-211.) The district court found that it lacked subject-matter jurisdiction over Plaintiffs' claims for two reasons. First, the ecclesiastical-abstention doctrine—which prohibits civil courts from delving into matters of theological controversy, church discipline, ecclesiastical government, or the conformity of the members of the church to the standard of morals required of them—prohibited the district court from exercising jurisdiction over Plaintiffs' claims. (ROA.199-207.) That is because adjudicating Plaintiffs' negligence claim would require the district court to engage in unconstitutional review of ecclesiastical matters. (ROA.199.)

Second, the *Feres* doctrine—which bars suits based on accidents incident to military service—independently barred Plaintiffs' negligence claim. (ROA.207-210.) The *Feres* doctrine applied to Latrisha's own claim because her claim was premised on a theory that the Army Chaplain's threatened breach of his duty of confidentiality (to himself notify local law-enforcement) that allegedly led to the shooting was incident to her miliary service.

(ROA.208.) The remaining plaintiffs' claims were also barred under the *Feres* doctrine because their injuries had their genesis in Latrisha's in-service injury. (ROA.209-210.)

Because the district court found that jurisdiction was lacking for the above reasons, it did not reach any additional arguments under Rule 12(b)(6) and instead simply dismissed the case. (ROA.198.) This appeal followed.[6]

## STANDARD OF REVIEW

The parties agree that a *de novo* standard of review applies to the district court's dismissal for lack of jurisdiction. *See McRaney v. N. Am. Mission Bd. of the S. Baptist Convention, Inc.*, 966 F.3d 346, 348 (5th Cir. 2020); Pls.' Br. at 23.

## SUMMARY OF THE ARGUMENT

The district court correctly dismissed Plaintiffs' complaint for lack of subject-matter jurisdiction. More specifically, the district court correctly found that it lacked jurisdiction for two, independent reasons.

*First*, the ecclesiastical-abstention doctrine deprived the district court of jurisdiction. The district court properly recognized that the gravamen of Plaintiffs' claim is one for clergy malpractice because Plaintiffs allege an Army

---

[6] This is the second appeal to have reached this Court based on Steve's death. Plaintiffs previously sued Young County, its sheriff, and the deputy who shot Steve. In that appeal, this Court affirmed the district court's dismissal of that lawsuit. *Winder v. Gallardo*, 118 F.4th 638, 642 (5th Cir. 2024); Pls.' Br. at 15 n.1.

Chaplain was negligent when he provided spiritual counsel to Latrisha about how to respond to her husband's suicide threat. "Plaintiffs' negligence cause of action," the district court correctly reasoned, "focuses on clergy malpractice, which under Texas law has been repeatedly rejected because it would require this Court's unconstitutional review of ecclesiastical matters." (ROA.199, internal footnote omitted.)

*Second,* the *Feres* doctrine independently barred Plaintiffs' suit. The *Feres* doctrine preserves the United States' sovereign immunity from all suits based on injuries incident to military service, including derivative suits brought by a service member's relatives. All three criteria for applying *Feres* were satisfied here: at the time the Army Chaplain allegedly injured Latrisha by threatening to breach his duty of confidentiality, Latrisha was on active duty and on-base, receiving counselling services provided to her as a benefit of military service. The district court therefore correctly concluded that *Feres* barred Plaintiffs' claims.

Although Plaintiffs attempt to evade the ecclesiastical-abstention doctrine and the *Feres* bar, their arguments are not compelling. The recurring problem with Plaintiffs' arguments is that they contradict the allegations in their complaint. For example, Plaintiffs argue in their brief that "Latrisha did

not suffer an in-service injury,"[7] even though their complaint repeatedly alleges that the Army Chaplain injured Latrisha's "personhood" and violated her rights.[8] They also allege that "this case is simply a civil dispute in which a religious official happens to be involved,"[9] even though the complaint alleges multiple, key, religious components of this dispute, including the following allegations:

- that Latrisha asked to speak with the Army Chaplain because he is a chaplain;

- that the mission of the Army Chaplain Corps is to provide "*religious* support;"

- that the Army Chaplain owed Latrisha a duty of confidentiality because she made a communication to him in his capacity as a spiritual advisor;

- that the Army Chaplain had specialized training in suicide prevention because of his role as an Army Chaplain;

---

[7] Pls.' Br. at 50.

[8] ROA.33 at ¶ 71 (alleging that the Army Chaplain's actions "violate[d] Latrisha's *personhood* and rights") (emphasis added); ROA.11 at ¶ 19 (alleging that the Army Chaplain had a duty never to use his power "in ways that violate the *personhood* of another human being") (emphasis added); ROA.34 at ¶ 72 (alleging that the Army Chaplain harmed Latrisha when he allegedly "wrongfully coerced Latrisha into calling the Young County Sheriff's Office").

[9] Pls.' Br. at 42.

- that he provided "*spiritual*" advice to Latrisha;

- that while doing so he "was acting in the scope of his employment as a member of the United States Army Chaplain Corps;" and

- that, when judging whether he was negligent, he should be judged against the standard of care for a "*trained Army Chaplain*."[10]

After considering those and other allegations in Plaintiffs' complaint, the district court properly concluded that this case was not simply a civil dispute in which a religious official happens to be involved. Rather, this case could not be adjudicated without engaging in an unconstitutional review of ecclesiastical matters.

The district court's dismissal for lack of jurisdiction can readily be affirmed on either of the two grounds described above—i.e., the ecclesiastical-abstention doctrine or the *Feres* doctrine. Alternatively, though, Plaintiffs' complaint also fails to state a claim for negligence. Specifically, the complaint fails to allege facts that would demonstrate a legal duty or breach. Under Texas law, there is generally no duty to control the actions of a third party, and there is no breach when a defendant did only what a person of ordinary prudence

---

[10] ROA.15 at ¶ 23; ROA.10 at ¶ 17; ROA.11-15 at ¶¶ 19-22; ROA.11 at ¶ 18; ROA. 32 at ¶ 69; ROA. 32-33 at ¶ 70 (emphasis added).

would have done in similar circumstances. Because that was the case here, no claim was stated.

The district court's judgment should be affirmed.

## ARGUMENT AND AUTHORITIES

As discussed below, the district court properly dismissed Plaintiffs' negligence cause of action for two independent reasons: (1) the ecclesiastical-abstention doctrine applied, and (2) the *Feres* doctrine barred suit. Alternately, (3) Plaintiffs' complaint also failed to state any claim for relief. On appeal, Plaintiffs fail to show any basis for disturbing the district court's judgment, which should be affirmed.

**1.   The ecclesiastical-abstention doctrine deprived the district court of jurisdiction.**

The district court properly recognized that adjudicating Plaintiffs' negligence claim would have required it to resolve religious matters in violation of the Free Exercise Clause of the First Amendment. (ROA.199-207.) Specifically, the district court correctly found that "Plaintiffs' negligence cause of action focuses on clergy malpractice, which under Texas law has been repeatedly rejected because it would require this Court's unconstitutional review of ecclesiastical matters." (ROA.199.)

14

### A.    The ecclesiastical-abstention doctrine protects the religious freedoms guaranteed by the First Amendment.

As this Court has recognized, "the Free Exercise Clause protects religious relationships, including the counseling relationship between a minister and his or her parishioner, primarily by preventing the judicial resolution of ecclesiastical disputes turning on matters of 'religious doctrine or practice.'" *Sanders v. Casa View Baptist Church*, 134 F.3d 331, 336 (5th Cir.1998). Granted, the Free Exercise Clause does not "categorically insulate" all religious relationships from judicial scrutiny because doing so "would necessarily extend constitutional protection to the secular components of these relationships." *Id.* at 335-336. But the Free Exercise Clause does prohibit civil courts from delving into matters of 'theological controversy, church discipline, ecclesiastical government, or the conformity of the members of the church to the standard of morals required of them.'" *In re Lubbock*, 624 S.W.3d 506, 508–09 (Tex. 2021) (quoting *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 714 (1976)). "The doctrine is grounded in the First Amendment, which protects the right of religious institutions 'to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine.'" *In re Lubbock*, 624 S.W.3d at 509 (quoting *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church*, 344 U.S. 94, 116 (1952)).

To protect the religious freedom guaranteed by the First Amendment, "any exception to ecclesiastical abstention by application of neutral principles must be *narrowly drawn* to avoid inhibiting the free exercise of religion or imposing secular interests on religious controversies." *In re Lubbock*, 624 S.W.3d at 513 (emphasis added); *see also Westbrook v. Penley*, 231 S.W.3d 389, 398–99 (Tex. 2007) (explaining that "the neutral-principles approach" has rarely been expanded beyond the church "property-ownership context"). Consequently, "if the matter cannot be determined by the court without resolving a religious controversy," then the court should not adjudicate the matter. *Shannon v. Mem'l Drive Presbyterian Church*, 476 S.W.3d 612, 622 (Tex. App.—Houston [14th Dist.] 2015, pet. denied).

The parties generally agree on the test used to determine if a plaintiff's complaint triggers the ecclesiastical-abstention doctrine. Namely, a court should "look to the 'substance and effect' of the plaintiff's allegations to determine *whether the dispute is ecclesiastical in nature or simply a civil dispute in which a religious official happens to be involved*." (Pls.' Br. at 28) (emphasis added) (citing *Mosby v. Kleinguetl*, No. 14-19-00594-CV, 2021 WL 824779, at *3 (Tex. App.—Houston [14th Dist.] Mar. 4, 2021, no pet.) (mem. op.); *In re Alief Vietnamese Alliance Church*, 576 S.W.3d 421, 429 (Tex. App.—Houston [14th Dist.] 2019, orig. proceeding); *Shannon*, 476 S.W.3d at 622).

**B.    The district court properly found that the ecclesiastical-abstention doctrine applied here.**

Here, the district court properly found that, based on the substance and effect of Plaintiffs' allegations, the dispute was ecclesiastical in nature and not simply a civil dispute in which a religious official happens to be involved. (ROA.200-201.) That holding was correct and well-supported by the record for multiple reasons, including the following:

- The complaint asserted that "Latrisha wanted to speak to a chaplain for both *spiritual* and secular advice about Steve's accusations and apparent suicide threat."[11]

- The complaint alleged that the Chaplain was acting in his capacity as a "spiritual advisor" to Latrisha.[12]

- The complaint also made clear that, during the interactions between the Chaplain and Latrisha, the Chaplain "address[ed] her spiritual needs" and "counselled her spiritually."[13]

---

[11] ROA.201 (quoting ROA.15 at ¶ 23) (emphasis).

[12] ROA.201 (quoting ROA.11 at ¶ 20) (quoting U.S. Dep't of the Army, Reg. 165-1 § 16-2).

[13] ROA.201 (quoting ROA.15 at ¶ 24).

- The complaint acknowledged that the official, stated mission of the Army Chaplain Corps is "to provide for the comprehensive religious support to the Army."[14]

- The Army suicide training pamphlet that Plaintiffs cited to in their response to the motion to dismiss repeatedly emphasized an Army Chaplain's spiritual role.[15] For example, the pamphlet explains that Chaplains help establish "*spiritual* health," advise commanders on *moral* and *ethical* issues," and "provide "comprehensive *religious* support services."[16]

On top of those allegations, Plaintiffs conceded that there was an "evidentiary component of Plaintiffs' negligence claim that touches on religion." (ROA.205, citing ROA.144.) Namely, Plaintiffs acknowledged that the "duty of confidentiality" the Army Chaplain allegedly owed Latrisha arose from Army rules and regulations that apply only to communications made to an Army Chaplain in his capacity as a spiritual advisor. (ROA.205, citing ROA.144.) In other words, by Plaintiffs' own admission, if the Army Chaplain

---

[14] ROA.201 (quoting ROA.10 at ¶ 17) (quoting *Chaplain Corps*, § 39-1.a. (June 1, 2017)).

[15] ROA.202 ((citing ROA.144) (citing U.S. Dep't of the Army, Health Promotion, Risk Reduction, and Suicide Prevention (Apr. 14, 2015), https://www.army.mil/e2/downloads/rv7/r2/policydocs/p600_24.pdf)).

[16] ROA.202 (quoting U.S. Dep't of the Army, Health Promotion, Risk Reduction, and Suicide Prevention § 8-4 (Apr. 14, 2015) (emphasis added).)

had not been a chaplain, he would not have owned Latrisha a duty of

confidentiality. The significance of Plaintiffs' concession was not lost on the

district court:

> Plaintiffs even admit "the only evidentiary component of
> Plaintiffs' negligence claim that touches on religion is [the
> Chaplain's] duty of confidentiality that he threatened to breach to
> coerce Latrisha." The existence of this tension—whether the
> Chaplain's duty of confidentiality is religious or secular in
> nature—is precisely why free exercise principles mandate the
> Court abstain from adjudication here. Indeed, "[i]t is a core tenet
> of First Amendment jurisprudence that, in resolving civil claims,
> courts must be careful not to intrude upon internal matters of"
> religious doctrine. It is not for the Court to adjudicate, or even
> question, the Chaplain's duty of confidentiality, given that
> Plaintiffs have admitted, and Army regulations make clear, there is
> a religious component to this inquiry.

(ROA.205 (internal footnotes and citations omitted).) On appeal, Plaintiffs

stand by that key admission; namely, they continue to admit that there is an

"evidentiary component" to their negligence claim insofar as the Army

Chaplain's duty of confidentiality arose "by virtue of his being a chaplain."

(Pls.' Br. at 42; *see also id.* at 35.)

Given Plaintiffs' concession that at least one aspect of their claim has a

religious component, as well as the multiple allegations in their complaint

about the religious nature of this dispute, the district court properly concluded

that this case was not "simply a civil dispute in which a religious official

happens to be involved." (ROA.202.) As such, the district court properly

dismissed the suit for lack of subject-matter jurisdiction. (ROA.207.)

## C.    Plaintiffs' three attempts to evade the ecclesiastical-abstention doctrine fail.

First, Plaintiffs contend that the Army's suicide-prevention training

program makes their claim a secular one. (Pls.' Br. at 29.) In support of that

theory, they wrongly assume that "the Army's suicide prevention training

program is and obviously has to be secular under the First Amendment." (Pls.'

Br. at 29.) The district court exposed the flaw in this theory by pointing out

that the very program materials Plaintiffs rely on repeatedly explain the

religious role that Chaplains play in the Army's suicide-prevention training

program:

> This suicide training pamphlet . . . explains that "Chaplains
> provide Family Life Ministry to Soldiers and Family Members to
> establish and maintain personal and *spiritual* health, and build or
> restore healthy relationships." It also instructs that a chaplain's
> purpose is to "[a]dvise commanders on *moral* and *ethical* issues and
> other stress factors that may result in an increased risk" for suicide.
> Tellingly, the pamphlet says, "Chaplains, chaplain assistants, and
> civilians who work in support of the Chaplain Corps provide
> comprehensive *religious* support services that are designed to
> enhance resilience and readiness."

(ROA.202 (internal footnotes omitted).) So Plaintiffs' reliance on the Army's

suicide-prevention program documents is misplaced because those documents

actually repeatedly describe the religious role of Chaplains in the Army's suicide-prevention program.

Plaintiffs make a related argument in a footnote, when they opine that it would be senseless for the Army's suicide-prevention program to include religious support from the Army Chaplains Corps given that Army service members do not all share the same religious beliefs:

> It also makes no sense that handling suicide intervention in the Army Chaplain Corps in general—and specifically whether and when to involve law enforcement—would be religious in nature at all or a religious question because of the different religions among chaplains and the many servicemembers and family members who are not religious.

(Pls.' Br. at 36 n.5.) Contrary to Plaintiffs' assumption, the Army has well-documented regulations governing how its Chaplain Corps provide religious support in the pluralistic religious setting of the military. *See generally* U.S. Dep't of the Army, Reg. 165-1, Army Chaplain Corps Activities §§ 1-5, 1-6, 1-7, 2-2(b), 3-1(a), 3-5(b) (2015). Plaintiffs' unfounded opinion to the contrary does nothing to prove that their negligence claim is purely secular in nature.

Next, Plaintiffs make an argument that has no legal basis: they object to the fact that the United States did not provide declarations or other evidence to support its motion to dismiss for lack of jurisdiction. (Pls.' Br. at 36-37.) Specifically, Plaintiffs object that the district court's opinion "faults Plaintiffs for not pleading specific facts" to show their claim could be adjudicated

without reference to religion, when "Defendant could have provided evidence on this putative jurisdictional issue with its motion to dismiss." (Pls.' Br. at 36-37.) Plaintiffs' argument gets the law wrong in two respects. First, a defendant is not required to submit evidence in support of a motion to dismiss where, as here, the motion to dismiss is a "facial" attack on the plaintiff's complaint. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). Rather, with a facial attack, "the trial court is required merely to look to the sufficiency of the allegations in the complaint because they are presumed to be true." *Id.* Second, "[t]he burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (cited in ROA 198). Consistent with those two legal principles, the district court properly required Plaintiffs to point to allegations in their complaint that, if true, would provide a valid basis for jurisdiction. (ROA.203.) The bottom line is that the United States had no legal obligation to provide declarations or other evidence in support of its facial attack on Plaintiffs' complaint.

Finally, Plaintiffs contend that their negligence claim can be adjudicated without reference to religion, citing three cases: *Westbrook v. Penley*, 231 S.W.3d 389 (Tex. 2007); *McRaney v. N. Am. Mission Bd.*, 966 F.3d 346 (5th Cir. 2020); and *Sanders v. Casa View Baptist Church*, 134 F.3d 331 (5th Cir. 1998).

22

(Pls.' Br. at 37-43.) But their reliance on those cases is misplaced, as the district court found. (ROA.199-207).

As for *Westbrook*, that case undermines Plaintiffs' position. In *Westbrook*, the pastor was also a licensed professional marriage counselor, and the Texas Supreme Court "presume[d] the counseling at issue was purely secular in nature" as the plaintiff claimed. *Westbrook*, 231 S.W.3d at 392. Even then, the Texas Supreme Court declined to recognize a claim for "professional negligence" against the pastor:

> [W]e cannot ignore [defendant's] role as [the plaintiff's] pastor. . . . We conclude that parsing those roles for purposes of determining civil liability in this case, . . . , would unconstitutionally entangle the court in matters of church governance and impinge on the core religious function of church discipline.

*Id.* at 391-92. Accordingly, the Texas Supreme Court dismissed the case for lack of jurisdiction. *Id.* at 392. Here, Plaintiffs' facts are even weaker than those in *Westbrook* because Plaintiffs do not allege that the counselling the Army Chaplain provided Latrisha was "purely secular;" rather, they allege that the Army Chaplain was "addressing her spiritual needs" and "counseled her spiritually." (ROA.15 at ¶ 24.) And Plaintiffs do not allege that the Army Chaplain should be judged by the standard of care of a professional marriage counsellor, but as a "trained Army Chaplain." (ROA.33 at ¶ 70.) *Westbrook*

therefore does nothing to help Plaintiffs evade the ecclesiastical-abstention doctrine.

This Court's opinions in *Sanders* and *McRaney* do not help Plaintiffs either. Unlike the plaintiffs in those cases, Plaintiffs in this case are not asking this Court "to apply neutral principles of tort law to a case that, on the face of the complaint, involves a civil rather than religious dispute." *McRaney*, 966 F.3d at 349; *accord Sanders*, 134 F.3d at 337. For example, in *Sanders*, this Court allowed a malpractice claim to proceed against a minister because of three facts that made the case a regular negligence claim rather than a clergy-malpractice claim. *Sanders*, 134 F.3d at 337, 338. First, the minister held himself out to the plaintiffs "as possessing the education and experience of a professional marriage counselor," and his religious duties did not involve counselling. *Id.* at 337. Second, the plaintiffs did not ask for the minister's actions to be judged "by a standard of care defined by religious teachings, but by a professional standard of care" for a secular counsellor. *Id.* Third, the specific conduct constituting a breach of his professional duties (i.e., engaging in sexual relations with the plaintiffs) was obviously not "rooted in religious beliefs." *Id.* at 338. If not for those facts, this Court acknowledged that it would have run squarely into the "First Amendment difficulties posed by a claim for clergy malpractice." *Id.* at 337.

24

Here, Plaintiffs' complaint does not allege facts that would allow their negligence claim to be decided without reference to religion, like the complaints in *Sanders* or *McRaney*. First, the complaint does not allege that the Army Chaplain's advice to Latrisha had nothing to do with his religious beliefs. To the contrary, as noted above, the complaint alleges that the Army Chaplain offered "help in addressing her spiritual needs" and that his mission, as an Army Chaplain, was to provide her "religious support." (ROA.15 at ¶ 24; ROA.10 at ¶ 17.)

Second, and most importantly, the complaint does not ask that the Army Chaplain be judged as a secular advisor; rather, it asks that he be judged as "a trained Army Chaplain." (ROA.33 at ¶ 70.) That proposed standard is key because evaluating whether an Army Chaplain acted reasonably "as a trained Army Chaplain" necessarily requires judging whether he followed a standard of care defined by religious teachings. As part of their professional qualifications, Army Chaplains are required to be fully credentialed ministers of a religious faith organization.[17] Each Army Chaplain, by federal regulation, is required, while ministering to Army soldiers, to serve as "representatives of their distinctive religious group" and to minister to Army soldiers "in

---

[17] U.S. Dep't of Army, Reg. 165-1, Army Chaplain Corps Activities §§ 3- (a), 6-14(a)-(b) (2015).

accordance with the tenets or religious requirements of the RO [religious organization] that certifies or endorses them."[18] So for example, if Chaplain Johnson-Glassel were Buddhist, to adjudicate whether he failed to do that which a "trained Army chaplain" of ordinary prudence would have done, this Court would necessarily need to judge whether, when ministering to Latrisha, Chaplain Johnson-Glassel properly served as a representative of the Buddhist religion and followed the teachings of Buddha. No Texas court has yet undertaken such an unconstitutional exercise, and the district court properly declined to be the first. "The Court cannot attempt to navigate the hazards implicated in the instant case," the district court reasoned. (ROA.206.) Its reasoning was correct. Its decision should be affirmed.

2.    **The *Feres* doctrine also independently deprived the district court of jurisdiction.**

Even if the ecclesiastical-abstention doctrine had not deprived the district court of jurisdiction, another doctrine did: the *Feres* doctrine. (ROA.207.) In *Feres v. United States*, the Supreme Court held that "[t]he Government is not liable under the Federal Tort Claims Act for injuries which arise out of or are in the course of activity incident to service." *Feres v. United States*, 340 U.S. 135,

---

[18] *Id.* at §§ 6-14(a), 3-2(b)(4) ("Chaplains will perform their professional military religious leader ministrations in accordance with the tenets or religious requirements of the RO [religious organization] that certifies and endorses them.").

146 (1950). "Claims barred under the *Feres* doctrine are appropriately dismissed for want of jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Chandler v. United States*, 713 F. App'x 251, 253 (5th Cir. 2017).

### A. The district court correctly found that *Feres* barred Latrisha's claim.

The district court applied the correct analysis when determining that Latrisha's injuries were "incident to military service":

> To determine whether an injury was incident to military service, courts in this circuit consider: "(1) the duty status of the service member; (2) the place where the injury occurred; and (3) the activity in which the service member was engaged at the time of the injury."

(ROA.208 (citing *Morris v. Thompson*, 852 F.3d 416, 421 (5th Cir. 2017)). Tellingly, Plaintiffs' pleadings do not address these factors. (Pls.' Br. at 43-53.) When the district court evaluated these factors, it found that the *Feres* doctrine barred Latrisha's claim "because the injury to her personhood caused by the Chaplain's threatened breach of his duty of confidentiality was incident to military service, thereby barring her claims in this action." (ROA.208.)

### B. The district court correctly found that *Feres* barred the family members' claims.

The parties agree that the *Feres* doctrine is not limited to suits brought by the injured service member. (Pls.' Br. at 46.) Instead, as the Supreme Court has explained, "the *Feres* doctrine has been consistently applied to bar all suits on

behalf of service members against the Government based upon service related injuries"—including derivative suits brought by the service member's family members. *United States v. Johnson*, 481 U.S. 681, 687-88, 692 (1987) (applying *Feres* to bar a wrongful-death claim brought by the widow of a Coast guard pilot who died while performing a recuse mission); Pls.' Br. at 46 (recognizing that "*Feres* bars family members' claims when the *in-service injury is inflicted on the servicemember*"). In fact, *Feres* bars suit for a service member's injuries even if the suit is brought by a family member for a claim cognizable under state law as belonging to that family member. *See Schoemer v. United States*, 59 F.3d 26, 28, 30 n.5 (5th Cir. 1995) (explaining that, because her husband's FTCA claim was barred under the *Feres* doctrine, the wife's derivative claim for loss of consortium was barred under *Feres* as well); *see also Stencel Aero Eng'g Corp. v. United States*, 431 U.S. 666, 673 (1977). As the Fifth Circuit explained it in *Gaspard v. United States*, "FTCA relief is not available to family members for claims based on the injuries to their relatives in the armed forces . . . even when the claims of the family members are independent of the serviceman's cause of action under applicable state law." 713 F.2d 1097, 1102 (5th Cir. 1983) (internal citations omitted).

The parties also agree that the "genesis" test that the district court used is the correct test to use to determine whether *Feres* applies to a family member's

claim. (Pls.' Br. at 47.) "[T]he genesis test asks whether the civilian injury has its origin in an incident-to-service injury to a service member." *Ortiz v. United States ex rel. Evans Army Cmty. Hosp.*, 786 F.3d 817, 824 (10th Cir. 2015). If so, "then *Feres* applies as a bar to the third-party claim, just as it would to a claim by the service member for his or her injuries." *Ortiz*, 786 F.3d at 824; Pls.' Br. at 47.

One "clear-cut" example of the genesis test is when a relative of a service member sues for loss of consortium or mental anguish after the military negligently causes a service member's death or injury. *Ortiz*, 786 F.3d at 824. Such claims are "'ancillary or derivative to an injury to a serviceman incident to military service' and thus cannot proceed under *Feres*." *Ortiz*, 786 F.3d at 824 (quoting *Lombard v. United States*, 690 F.2d 215, 226 (D.C. Cir. 1982)); *see also Duncan v. Peters*, No. 98-51159, 1999 WL 642878, at *3 (5th Cir. July 27, 1999) (explaining that when "the military act[s] toward the service member but cause[s] injury to the service member's dependents[,]" *Feres* bars the claim).

The district court correctly concluded that, under the genesis test, the family members' claims were barred:

> Here, the family members' injuries, including those for pecuniary loss, loss of companionship, and mental anguish, had their genesis in Latrisha's in-service injury. Indeed, the "crucial element" of their claims involves and stems from the Chaplain's threatened breach of his duty of confidentiality which injured Latrisha's

personhood. *Gaspard*, 713 F.2d at 1102; *see also Ortiz*, 786 F.3d at 831 ("When we weigh all of the competing evidence, and view it in the light most favorable to plaintiff, we find that the injuries that [the service member's child] sustained forming the basis of the complaint are derivative of the injuries to her mother, [the service member].").

(ROA.210, internal footnotes omitted.) In sum, because Latrisha's family member's claims all derive from Latrisha's claim, the district court correctly found that those claims are barred by the *Feres* doctrine. (ROA.207-210.)

## C.    Plaintiffs' attempt to evade the *Feres* bar fails.

Plaintiffs make three arguments against applying the *Feres* doctrine to their case. Each of their arguments lack merit.

First, Plaintiffs criticize *Feres* and propose that "[t]he Supreme Court abolish the *Feres* doctrine." (Pls.' Br. at 44 n. 9; *see also id.* 49.) But Plaintiffs stop short of asking this Court to overrule or disregard *Feres*. (Pls.' Br. at 44 n. 9.) Their reticence is understandable considering this Court has previously held that it is in "no position" to overrule *Feres*. *See Read v. United States*, 536 F. App'x 470, 472 (5th Cir. 2013) ("As a 'strict stare decisis court,' we 'are in no position to challenge the statutory construction utilized by the Supreme Court in [*Feres*],' nor may we disregard or overrule Supreme Court precedent.").

Second, Plaintiffs seek to evade *Feres* by contending that Latrisha did not suffer an in-service injury. (Pls.' Br. at 45-46, 53.) Their argument is wrong on the facts and wrong on the law. First, it is wrong on the facts because Plaintiffs'

30

complaint alleges that Latrisha *did* suffer an-in service injury to her person. Specifically, the complaint alleges that the Army Chaplain "misue[d] his chaplaincy power and authority in a way to *violate Latrisha's personhood* and rights by threatening to disclose her communications":

> 71.    Under his duty of confidentiality to Latrisha and the applicable code of ethics in rendering spiritual advice, comfort, and guidance to Latrisha, Chaplain Johnson-Glassel owed Latrisha a duties of confidentiality and not to disclose her communications and a duty not to coerce her or misuse his chaplaincy power and authority in a way to violate Latrisha's personhood and rights by threatening to disclose her communications.

(ROA.33 at ¶ 71, highlighting added.) In addition, the complaint alleged that the Army Chaplain "wrongfully coerced Latrisha into calling the Young County Sheriff's Office"— which the complaint alleges is a violation of a provision in the Covenant and Code of Ethics for Chaplains of the Armed Forced that prohibits using chaplaincy power "in ways that *violate the personhood* of another human being." (ROA.11 at ¶ 19; ROA.34 at ¶ 72, emphasis added; Pls.' Br. at 51.) Based on those allegations in the complaint and others, the district court properly found that the complaint alleged Latrisha suffered an injury to her person while on-duty, on-base, and availing herself of Army benefits:

> [S]he suffered an injury to her personhood as a result of the
> Chaplain's threatened breach of his duty of confidentiality to her
> while she was on base in Fort Lee, Virginia. Finally, Latrisha was
> engaged in conversations with the Chaplain—seeking his religious
> counseling and advice—when her injuries took place.

(ROA.208 (citing ROA.9 at ¶ 12; ROA.15 at ¶ 24; ROA.33-34 at ¶¶ 71, 73).)

Therefore, Plaintiffs' own complaint belies their argument that Latrisha did not

suffer an in-service injury.

Plaintiffs' argument is likewise wrong on the law because, if their

complaint had not alleged that Latrisha suffered a personal injury, then

Plaintiffs' negligence claim would still fail for lack of jurisdiction. That is

because, in cases that allow the family members of enlisted personnel to sue

the United States, the family members allege "negligent conduct [that] is

directed to the dependent alone and does not involve any decisions by the

military toward enlisted personnel." *Scales v. United States*, 685 F.2d 970, 974

(5th Cir. 1982); *accord Duncan*, 1999 WL 642878, at *3. For example, the wife

of a service member could pursue an FTCA claim against a military hospital

that had negligently treated her. *Costley v. United States*, 181 F.2d 723, 726

(1950). By contrast, if the complaint alleges negligent conduct by the military

that is directed toward the enlisted personnel or intertwined with conduct

directed toward the enlisted personnel, then it is *Feres* barred. For example, this

Court has held that:

32

- *Feres* barred an infant's claim against the United States for a birth defect allegedly caused by a rubella vaccination his mother received during her service in the Air Force because the infant's claim focused "on the medical treatment that Air Force physicians gave his mother." *See, e.g., Scales*, 685 F.2d at 974.[19]

- *Feres* barred family members' claims that Air Force investigators caused them emotional distress by investigating their relative, an Air Force Major, because the investigators' conduct was not directed at the family members alone. *Duncan*, 1999 WL 642878, at * 3.

Here, the family members' allegations of negligence are not focused on the Army Chaplain's direct treatment of them alone; rather, their allegations focus on the treatment the Army Chaplain provided Latrisha. (ROA.33-34 at ¶ 72.) Accordingly, the family members' negligence claims are *Feres* barred, even if Latrisha had not alleged an in-service personal injury. *See Scales*, 685 F.2d at 974.

---

[19] In a footnote, Plaintiffs criticize *Scales* as employing an "inadequate *Feres* analysis." (Pls.' Br. at 47 n.10.) Two of the cases Plaintiffs cite are from outside the Fifth Circuit. *See id.* (citing *Brown v. United States*, 462 F.3d 609, 614 (6th Cir. 2006) and *Del Rio v. United States*, 833 F.3d 282, 287 & n.8 (11th Cir. 1987)). The third case is a Fifth Circuit case, but one that contains no discussion of the *Feres* doctrine because the United States did not contest liability in that case. *Dickerson v. United States*, 280 F.3d 470, 473 (5th Cir. 2002).

In their final attempt to evade the *Feres* bar, Plaintiffs make two policy arguments, both of which fail. First, Plaintiffs protest that it would be unfair to bar their claim because the Veterans' Benefit Act does not entitle Latrisha to compensation for Steve's death. (Pls.' Br. at 52.) But the Supreme Court has squarely rejected that argument. *See Stencel Aero Eng'g Corp. v. United States*, 431 U.S. 666, 673 (1977). In *Stencel*, the Supreme Court cautioned plaintiffs not to try to use the FTCA to evade the limitation-of-liability provisions in the Veterans' Benefit Act because to do so would frustrate one of the "essential features" of the Act: to "provide an upper limit of liability for the Government as to service-connected injuries." *Stencel Aero Eng'g Corp.*, 431 U.S. at 673; *accord Miller v. United States*, 42 F.3d 297, 307-308 (5th Cir 1995) (rejecting a service member's policy argument against applying *Feres* to his claim—i.e., that he did not receive sufficient benefits for his injury); *Gaspard*, 713 F.2d at 1102 ("This Court has barred claims even where the family member has no alternative remedy under the Veterans Benefits Act.").

Second, Plaintiffs contend that the third policy rationale for applying *Feres* does not apply here because "an Army Chaplain has rank without command" so "military discipline is not impacted by her wrongful-death claim." (Pls.' Br. at 53.) But *Feres* applies not just to "negligent orders" given by an officer in the soldier's chain-of-command but also, as is the case here,

when a plaintiff alleges "negligent acts" by a military officer. *Stencel*, 431 U.S. at 671-72; *see also United States v. Brown*, 348 U.S. 110, 112 (1954) (describing *Feres* as applying to "negligent orders given *or negligent acts* committed in the course of military duty") (emphasis added). An FTCA claim that alleges a military officer committed negligent acts would "require members of the Armed Services to testify in court as to each other's decisions and actions." *Stencel*, 431 U.S. at 673. Further, adjudicating such a claim "would require the military to allocate its resources" based on litigation risk, rather than military readiness. *Schoemer*, 59 F.3d at 30. Plaintiffs' policy arguments are, therefore, unavailing.

In sum, Plaintiffs' objections to applying *Feres* lack merit. The district court correctly held that the *Feres* doctrine deprived it of subject-matter jurisdiction. (ROA.207.) Its decision to dismiss Plaintiffs' cause of action on that basis should be affirmed.

**3.     Alternately, Plaintiffs' complaint fails to state a claim.**

**A.     Plaintiffs' complaint fails to plead facts to support the first element of a negligence claim—a legal duty.**

"Whether a legal duty exists is a threshold question of law for the court to decide from the facts surrounding the occurrence in question. If there is no duty, there cannot be negligence liability." *Thapar v. Zezulka*, 994 S.W.2d 635, 637 (Tex. 1999).

In their brief, Plaintiffs concede that the Army Chaplain did not owe Steve's children a legal duty. (Pls.' Br. at 68.) Under their theory of recovery, Steve's children can recover only if the Army Chaplain owed Steve a duty of care. (Pls.' Br. at 68-70.) In other words, if the Army Chaplain did not owe Steve a legal duty, then Steve's children cannot state a claim. (*Id.*) And as explained below, under Texas law, the Army Chaplain did not owe Steve a legal duty.

Steve and Lou Anne contend that the Army Chaplain owed them a legal duty because they are both asserting a claim of "negligent undertaking," and Lou Anne is asserting a bystander claim. (Pls.' Br. at 70-73.) Their argument mises the mark. To recover under either theory, they would still need to prove that the Army Chaplain owed them a legal duty *to control Deputy Gallardo's actions* because, according to their own complaint, "Deputy Gallardo fatally shot Steve." (ROA.23 at ¶ 45.) Under Texas law, there is generally no duty to control the actions of a third party. *See Tex. Home. Mgmt., Inc. v. Peavy*, 89 S.W.3d 30, 34 (Tex. 2008). That is true whether a plaintiff is asserting a negligent-undertaking claim or a bystander claim. *See ENGlobal U.S. v. Gatlin*, 449 S.W.3d 269, 280 (Tex. App.—Beaumont 2014, no pet.) (negligent-undertaking claim); *cf. Malone v. City of Fort Worth*, No. 4:09–CV–634–Y, 2014 WL 5781001, at *16 (N.D. Tex. Nov. 6, 2014) (explaining why a bystander-

liability claim also requires that the defendant have a "duty to intervene" to control the third person's conduct), *appeal dismissed*, 615 F. App'x 189 (5th Cir. 2015). Under Texas law, therefore, the Army Chaplain had no duty to protect Steve or Lou Anne from Deputy Gallardo's actions.

There is an exception to that general rule, but the complaint does not allege facts to support it. Under that exception, a defendant may have an affirmative duty to protect the victim from harm caused by a third party if the defendant is in what the law calls a "special relationship" with the plaintiff. *Peavy*, 89 S.W.3d at 34; *Brown v. USA Taekwondo*, 483 P.3d 159, 164 (Cal. 2021). In their brief, Plaintiffs point out, correctly, that "Texas law recognizes a variety of special relationships." (Pls.' Br. at 72.) Their brief includes a list of special relationships recognized under Texas law: physician-patient; therapist-patient; attorney-client; marriage counselor; and congregant-clergyman. (Pls.' Br. at 72.) Tellingly, their list does not include "*husband* of congregant-clergyman" or "*mother* of congregant-clergyman." (Pls.' Br. at 72.)

Instead, Plaintiffs' ask this Court to create a new "special relationship"—one that does not exist under Texas law. Specifically, they allege that the Army Chaplain entered into a "special relationship" with Lou Anne and Steve "by undertaking to render advice to Latrisha." (ROA.32 at ¶ 69.) No Texas court has found that, when a clergyman counsels a congregant, that creates a

"special relationship" between the clergyman and the congregant's family members. In fact, the Texas Supreme Court has refused to find such a duty in an analogous setting: where a health-care professional provides treatment to a patient. *See Thapar*, 994 S.W.2d at 637-640 (holding that a mental-health professional owes no duty to a nonpatient third party); *Van Horn v. Chambers*, 970 S.W.2d 542, 545 (Tex. 1998) ("Any duty of reasonable care on [the defendant's] part to avoid [negligent care and misdiagnosis] originates solely through the relationship with, and flows only to, his patient."). For example, in *Thapar*, the Texas Supreme Court held that a mother could not recover from a psychiatrist for negligent misdiagnosis and treatment of her son's psychiatric problems, following her son's killing of his stepfather, absent any doctor-patient relationship between the mother and the psychiatrist giving rise to a duty to mother. *Thapar*, 994 S.W.2d at 637-40. In sum, Texas law does not recognize a "special relationship" between a clergyman and a parishioner's family members, and the Texas Supreme Court has declined to find such a relationship in an analogous setting. Therefore, the complaint does not allege that the Army Chaplain had any relationship with either Steve or Lou Anne that would qualify as a "special relationship" giving rise to a legal duty under Texas law.

Because Latrisha's relatives cannot point to a "special relationship," the default rule applies here: there is no duty to control the actions of a third party. *See Peavy*, 89 S.W.3d at 34. Under that general rule, the Army Chaplain had no duty to protect any of Latrisha's relatives from the actions of Deputy Gallardo. "Absent a duty, one cannot be held liable for negligence." *Hagen v. BeautiControl Cosmetics, Inc.*, No. 98–CV–1199, 1998 WL 355479, at *1 (N.D. Tex. June 30, 1998). Accordingly, the complaint fails to state a claim for negligence.

### B.     The complaint fails to plead facts to support the second element of a negligence claim—a breach.

Under "ordinary negligence principles," "[t]o establish the breach, the plaintiff must prove that the defendant's conduct constituted negligence, which is 'simply doing or failing to do what a person of ordinary prudence in the same or similar circumstances would have not done or done.'" *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 607 (Tex. 2016); *accord* Texas Civil Pattern Jury Charges § 2.1 (2024) (providing jury instructions for "negligence" and "ordinary care").

The circumstances here were a life-threatening emergency: a mentally ill man, who was drunk, emotionally disturbed, and armed, had just sent his wife text messages in which he threatened to kill himself. (ROA.32-33 at ¶ 70,

ROA.15 at ¶ 25.) His text messages included a photograph of himself "with a handgun under his chin and to his head and stating he could not bear it anymore." (ROA.15 at ¶ 23.) Facing those circumstances, a "person of ordinary prudence" might very well have advised the wife that "she should call local law enforcement and ask them to do a welfare check" and that "he would call law enforcement if she did not call." (ROA.15 at ¶¶ 24, 25.) Advising someone to ask the police to perform a welfare check on their suicidal spouse under these circumstances does not plausibly allege negligence. For that reason, the complaint does not allege facts that would support the second element of a negligence claim—a breach.

\* \* \*

In sum, the complaint fails to state a claim for negligence in two regards. First, it does not allege facts that show a legally cognizable duty owed by the Army Chaplain to control Deputy Gallardo's conduct. Second, it does not allege facts that would show the Army Chaplain failed to do what a person of ordinary prudence would do in this life-threatening emergency. So, should this Court reach the issue of whether Plaintiffs' complaint states a claim for negligence, it should hold that the complaint does not state such a claim, and affirm the district court's judgment on that ground.

## **CONCLUSION**

The district court's judgment should be affirmed.

Respectfully submitted,

NANCY E. LARSON
ACTING UNITED STATES ATTORNEY

 /s/ *Andrea Hyatt*
Andrea Hyatt
Assistant United States Attorney
Texas Bar No. 24007419
Burnett Plaza, Suite 1700
801 Cherry Street, Unit #4
Fort Worth, Texas 76102-6882
Telephone: 817.252.5200
Fax: 817.252.5458
Andrea.Hyatt@usdoj.gov

Attorneys for the Appellee

## CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2025, this document was served on appellants by transmission to their counsel of record through the Court's electronic filing system.

I further certify that (1) any required privacy redactions have been made; (2) the electronic submission is an exact copy of the paper document; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

/s/ *Andrea Hyatt*
Andrea Hyatt
Assistant United States Attorney

## CERTIFICATE OF COMPLIANCE

1.　　This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 9370 words.

2.　　This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Calisto MT font.

/s/ *Andrea Hyatt*
Andrea Hyatt
Assistant United States Attorney