# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

Case No. 25-10297

---

Latrisha Winder, Individually, as next friend of J.W., a minor, and as personal representative of the Estate of Stephen Wayne Winder, Deceased; Lily Winder; Stephen Tyler Winder; Emma Winder, and Lou Anne Phillips

Plaintiffs - Appellants

v.

United States of America,

Defendant - Appellee

---

## On Appeal from
United States District Court for the Northern District of Texas

7:24-CV-83

---

## APPELLANTS' PETITION FOR REHEARING EN BANC

---

Stephen W. Kotara

Douglas R. Hafer

CURNUTT & HAFER, LLP
301 West Abram Street
Arlington, Texas 76010
(817) 548-1000

*Counsel for Plaintiffs-Appellants*

# Certificate of Interested Persons

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Local Rule 28.2.1 have an interest in the outcome of this case. These representations are made so that the judges of this Court may evaluate possible disqualification or recusal.

| Plaintiffs-Appellants | Counsel for Plaintiff-Appellants |
| --- | --- |
| Latrisha Winder, Individually, as next friend of J.W., a minor, and as personal representative of the Estate of Stephen Wayne Winder, Deceased | Stephen W. Kotara and Douglas R. Hafer Curnutt & Hafer, LLP |
| Lily Winder | Stephen W. Kotara and Douglas R. Hafer Curnutt & Hafer, LLP |
| Stephen Tyler Winder | Stephen W. Kotara and Douglas R. Hafer Curnutt & Hafer, LLP |
| Kolene Winder, as next friend of E.W., a minor | Stephen W. Kotara and Douglas R. Hafer Curnutt & Hafer, LLP |
| **Defendant-Appellee** | **Counsel for Defendant-Appellee** |
| United States | Brian W. Stoltz |
| *Amici Curiae* | **Counsel for *Amici Curiae*** |

| | |
|---|---|
| • The Jurisdiction of the Armed Forces and Chaplaincy for the Anglican Church in North America<br>• The Aleph Institute<br>• The Lutheran Church—Missouri Synod Ministry to the Armed Forces<br>• The Chaplain Alliance for Religious Liberty | Daniel H. Blomberg, Michael J. O'Brien, and Amanda L. Salz<br>The Becket Fund for Religious Liberty |

_S/Stephen W. Kotara_
Stephen W. Kotara
Attorney of record for
Appellants

## Appellants' Rule 40(b)(2) Statement

I believe the questions presented in this petition satisfy Federal Rule of Appellate Procedure 40(b)(2).[1] This case satisfies these criteria for en banc review: the panel's affirmance conflicts with the Court's controlling precedent on ecclesiastical abstention, conflicts with authoritative decisions of other United States Courts of Appeals, and leaves unresolved questions of exceptional constitutional and institutional importance.

The panel's decision summarily affirms the district court's dismissal under the ecclesiastical-abstention doctrine. As affirmed, the district court's decision effectively establishes that when the government employs clergy, any conduct undertaken in the course of counseling is immune from judicial review—even where the alleged negligence concerns secular acts governed by neutral standards of care. That result cannot be reconciled with this Court's *Sanders v. Casa View Baptist Church* decision or this Court's recent decision in *McRaney v. North American Mission Board*, which limit ecclesiastical abstention to disputes requiring theological judgment. If left

---

[1] This petition is timely. Fed. R. App. P. 26(a)(1)(C); Fed. R. App. P. 40(1)(A).

unaddressed, the panel's affirmance materially expands church autonomy beyond its constitutional bounds and creates tension with binding precedent.

The district court barred this action under the *Feres* doctrine on the theory that a servicemember suffered an "injury to personhood," notwithstanding that the gravamen of the suit is the death of a civilian. The panel's affirmance leaves intact a rule that *Feres* bars civilian wrongful-death claims whenever a servicemember is emotionally affected. That approach conflicts with other circuits that have addressed *Feres* in the context of a civilian's injury and arguably conflicts with Supreme Court precedent focusing on the servicemember status of the injured party. It represents a substantial expansion of *Feres* with far-reaching consequences for FTCA litigation involving civilians.

This case presents recurring and unresolved questions of exceptional constitutional and institutional importance concerning:

- the interaction between the First Amendment and FTCA liability for government-employed clergy,

- the proper limits of the *Feres* doctrine, and

- the standards governing suicide-intervention conduct affecting civilians.

Absent clarification, district courts lack guidance in an area of law this Court has recently revisited.

Moreover, the absence of reasoning frustrates further review and risks inconsistent application of constitutional doctrine. While unpublished summary dispositions play an important role, their use here in a case with important and novel constitutional and jurisdictional issues—after full briefing and oral argument—leaves this Court's doctrine opaque and unsettled. En banc review would allow the Court to clarify the governing standards and ensure doctrinal coherence.

# Table Of Contents

Certificate of Interested Persons .................................................. 2

Appellants' Rule 40(b)(2) Statement ............................................ 4

Table of Authorities ................................................................... 8

Issues Meriting En Banc Consideration ............................... 10

Course of Proceedings ........................................................... 10

Statement of Facts ................................................................. 11

Argument ................................................................................ 13

   I.    **The panel's decision conflicts with the Court's precedent on the ecclesiastical-abstention doctrine.** .... 15

   II.   **The panel's decision conflicts with other circuits' decisions on the application of the *Feres* doctrine where the gravamen of the suit is the death or injury of a civilian.** ............................................... 20

   III.  **The panel's unreasoned decision presents recurring and unresolved questions of exceptional constitutional and institutional importance and an institutional consideration when the absence of reasoning frustrates further review and risks inconsistent application of constitutional doctrine in this Court and in lower courts.** ......................... 23

Conclusion .............................................................................. 28

Certificate of Service ............................................................. 29

Certificate of Compliance ..................................................... 29

# Table of Authorities

## Cases

*Carter v. Stanton,*
405 U.S. 669 (1972)................................................... 26

*Carter v. United States,*
145 S. Ct. 519 (Feb. 24, 2025) ........................................ 20, 21

*Dart Cherokee Basin Oper. Co. v. Owens,*
574 U.S. 81 (2014)................................................... 27

*Feres v. United States,*
340 U.S. 135 (1950)................................................. 21

*Indian Towing Co. v. United States,*
350 U.S. 61 (1955)................................................. 20

*Jones v. Wolf,*
443 U.S. 595 (1979)................................................. 16

*McRaney v. N. Am. Mission Bd. of S. Baptist Convention, Inc.,*
966 F.3d 346 (5th Cir. 2020) ....................................... 17

*McRaney v. N. Am. Mission Bd.,*
157 F.4th 627 (5th Cir. Oct. 28, 2025)............................... 19, 20

*NLRB v. Amalgamated Clothing Workers of Am., AFL–CIO, Loc. 990,*
430 F.2d 966 (5th Cir. 1970)....................................... 26

*Northcross v. Bd. of Educ. of Memphis City Schs.,*
412 U.S. 427 (1973) (per curiam) ................................... 25

*Presbyterian Church in the U.S. v. Mary Elizabeth Blue Hull
Mem'l Presbyterian Church,*
393 U.S. 440 (1969) ................................................. 15

*Romero v. United States,*
954 F.2d 223 (4th Cir. 1992)....................................... 22

*Sanders v. Casa View Baptist Church,*
134 F.3d 331 (5th Cir. 1998) ....................................... 15, 16

*Serbian E. Orthodox Diocese v. Milivojevich*,
  426 U.S. 696 (1976) ....................................................... 17

*Stencel Aero Eng'g Corp. v United States*,
  431 U.S. 666 (1977)........................................................ 22

*Taylor v. McKeithen*,
  407 U.S. 191 (1972)................................................. 26, 27

*United States v. Johnson*,
  481 U.S. 681 (1987) ...................................................... 21

*United States v. Pajooh*,
  143 F.3d 203 (5th Cir. 1998)........................................ 25

*United States v. Shearer*,
  473 U.S. 52 (1985).......................................................... 21

*Winder v. United States*,
  No. 7:24-CV-00083-O, 2025 WL 256980
  (N.D. Tex. Jan. 17, 2025) ............................................ 11

## Rules

Fed. R. App. P. 26(a)(1)(C)................................................. 4

Fed. R. App. P. 40(1)(A)...................................................... 4

Mil. R. Evid. 503 ................................................................ 18

## Issues Meriting En Banc Consideration

1. The panel's decision conflicts with the Court's precedent on the ecclesiastical-abstention doctrine.

2. The panel's decision conflicts with other circuits' decisions on the application of the *Feres* doctrine where the gravamen of the suit is the death or injury of a civilian.

3. The panel's unreasoned decision presents recurring and unresolved questions of exceptional constitutional and institutional importance and an institutional consideration when the absence of reasoning frustrates further review and risks inconsistent application of constitutional doctrine in this Court and in lower courts.

## Course of Proceedings

Plaintiffs-Appellants sued Defendant-Appellee the United States, asserting a wrongful-death claim under the Federal Tort Claims Act (FTCA) for a U.S. Army Chaplain's negligent conduct that was a proximate cause of Steve Winder's death and his wife and children's injuries and damages. ROA.1, 31. Defendant moved to dismiss Plaintiffs' Complaint, alleging (1) the District Court lacks subject-matter jurisdiction because Plaintiffs have asserted a claim for "clergy malpractice" that is barred by the ecclesiastical-abstention doctrine; (2) Plaintiffs' claim is barred by sovereign immunity because

the negligence claim has no state-law corollary; (3) the District Court lacks subject-matter jurisdiction because Plaintiffs' claims are barred by the *Feres* doctrine; (4) the Complaint fails to state a claim because duty and breach of duty are not plausibly pled. ROA.53.

The District Court granted the motion to dismiss, holding that it lacked subject-matter jurisdiction under the ecclesiastical-abstention doctrine and the *Feres* doctrine. ROA.207, 210, 212; Tabs 2 and 3. *See Winder v. United States*, No. 7:24-CV-00083-O, 2025 WL 256980, at *7, 9 (N.D. Tex. Jan. 17, 2025). The District Court did not address whether Plaintiffs' claim is barred on the ground that the negligence claim has no state-law corollary and whether the Complaint fails to state a claim. The jurisdictional dismissal was without prejudice. ROA.210, 212.

The per curiam panel decision of Judges Higginbotham, Ho, and Douglas summarily affirmed the district court's dismissal. Tab 1.

## Statement of Facts

Plaintiffs-Appellants are Latrisha Winder, the widow of Steve Winder and the personal representative of Steve's estate, Steve's four children, and Steve's mother-in-law Lou Anne Phillips (Latrisha's

mother). ROA.6-8. Steve was shot and killed in his home in rural Young County, Texas by a Young County Sheriff's Deputy who had been dispatched to conduct a welfare check on Steve after his suicidal threat. ROA.6, 15-16, 23.

Latrisha was an Army National Guard specialist at Fort Lee, Virginia for training. ROA.9. Captain Keven Johnson-Glassel was a Chaplain in the Army Chaplain Corps at Fort Lee. ROA.10. After being accused by Steve of infidelity and being texted photos of Steve with a gun to his head, Latrisha met with Captain Johnson-Glassel in her barracks. ROA.9, 15-16. After discussing Steve's allegations of infidelity and showing Captain Johnson-Glassel the photos, he told her to call for a welfare check. ROA.15-16. Latrisha and Lou Anne, who was "Facetiming" with Latrisha, both told Captain Johnson-Glassel that they did not think it was a good idea to call for a welfare check, but he told Latrisha that if she did not call law enforcement, he would. ROA.15-16. Latrisha relented to this coercion and called for the welfare check, which resulted in the dispatch to Steve's home and his shooting death. ROA.15-23. Lou Anne was standing next to Steve when he was shot. ROA.21-24, 31.

## Argument

The panel's affirmance conflicts with the Court's controlling precedent on ecclesiastical abstention, conflicts with authoritative decisions of other circuits on the *Feres* doctrine, and leaves unresolved questions of exceptional constitutional and institutional importance.

The panel's decision summarily affirms the district court's dismissal under the ecclesiastical-abstention doctrine. If left unaddressed, the panel's affirmance materially expands church autonomy beyond its constitutional bounds and creates tension with precedent, and the nature of the dismissal is not addressed.

The district court barred this action under the *Feres* doctrine. on the theory that a service member suffered an "injury to personhood," notwithstanding that the gravamen of the suit is the death of a civilian. That approach conflicts with other circuits that have addressed *Feres* in the context of a civilian's injury and arguably conflicts with Supreme Court precedent focusing on the servicemember status of the injured party. It represents a substantial

expansion of *Feres* with far-reaching consequences for FTCA litigation involving civilians.

Because of the panel opinion's summary affirmance, this case presents recurring and unresolved questions of exceptional constitutional and institutional importance concerning:

- the interaction between the First Amendment and FTCA liability for government-employed clergy,

- the proper limits of the *Feres* doctrine, and

- the standards governing suicide-intervention conduct affecting civilians.

Absent clarification, district courts and future litigants lack guidance in an area of law this Court has recently revisited.

Moreover, the absence of reasoning frustrates further review and risks inconsistent application of constitutional and jurisdictional doctrines. En banc review would allow the Court to clarify the governing standards and ensure doctrinal coherence.

## I. The panel's decision conflicts with the Court's precedent on the ecclesiastical-abstention doctrine.

As affirmed, the district court's decision effectively establishes that when the government employs clergy, any conduct undertaken while counseling is immune from judicial review—even where the alleged negligence concerns secular acts governed by neutral standards of care such as the secular suicide-intervention conduct in this case. That result cannot be reconciled with this Court's precedent.

"The First Amendment does not categorically insulate religious relationships from judicial scrutiny, for to do so would necessarily extend constitutional protection to the secular components of these relationships." *Sanders v. Casa View Baptist Church*, 134 F.3d 331, 335-36 (5th Cir. 1998) (quoting *Presbyterian Church in the U.S. v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church*, 393 U.S. 440, 449–50 (1969)). If a dispute involving a religious organization or official can be resolved by the application of neutral principles of law and does not require the court to become entangled in questions of religious

doctrine, policy, and practice, the First Amendment does not bar the litigation. *See Jones v. Wolf*, 443 U.S. 595, 602-03 (1979).

*Sanders* involved a pastor who conducted marital counseling sessions with some of his parishioners. Although he did provide marital counseling to the two plaintiffs, one who was an administrative secretary at the church and the other who was eventually hired as a receptionist at the church, he also entered into a sexual relationship with both plaintiffs. This Court disagreed with the pastor's claims that he was entitled to judgment as a matter of law because he occasionally discussed scripture with the plaintiffs during their counseling sessions, and therefore the sessions were not purely secular—they were "inherently ecclesiastical"—and because the plaintiffs' claims were "in essence noncognizable claims for 'clergy malpractice.' " *Sanders*, 134 F.3d at 335.

The Court held that, for the pastor to "invoke the protection of the First Amendment for conduct taking place within his counseling relationships with the plaintiffs," he was required to "assert that the specific conduct allegedly constituting a breach of his professional and fiduciary duties was rooted in religious belief." *Id.* at 337–38. The

court then noted "the obvious truth that the activities complained of by the plaintiffs"—intentional sexual misconduct with the plaintiffs— "were not part of his religious beliefs and practices." *Id.* at 338. The Court held that the pastor was not entitled to judgment as a matter of law under the ecclesiastical abstention doctrine. *Id.*

Similarly, the negligent conduct that Plaintiffs sue for is not part of Captain Johnson-Glassel's *religious beliefs and practices*. The conduct is his negligent advice in handling Steve's suicide threat, which is a purely secular matter. As pleaded, this case does not require "resolution of 'strictly and purely ecclesiastical' questions." *McRaney v. N. Am. Mission Bd. of S. Baptist Convention, Inc.*, 966 F.3d 346, 348 (5th Cir. 2020) (reviewing de novo dismissal under ecclesiastical-abstention doctrine) (citing *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 713 (1976)).

Unlike what this Court did in *Sanders*—separating the pastor's secular conduct from his religious conduct—the district court declined to do so, claiming that the "existence of this tension— whether the Chaplain's duty of confidentiality is religious or secular

in nature[2]—is precisely why free exercise principles mandate the Court abstain from adjudication here." ROA.205. The district court would not "attempt to navigate the hazards implicated in the instant case." ROA.206. The panel's decision summarily affirms the district Court's dismissal, and as affirmed, the district court's decision effectively establishes that when the government employs clergy, any conduct undertaken in the course of counseling is immune from judicial review—even where the alleged negligence concerns secular acts governed by neutral standards of care. That result cannot be reconciled with *Sanders*.

After briefing and just before oral argument in this case, this Court issued *McRaney v. North American Mission Board*, 157 F.4th

---

[2] It is secular. Army Chaplains must maintain the confidentiality of communications to them in their official capacity. ROA.11-14. Captain Johnson-Glassel's duty of confidentiality arises from secular military sources, not from any religious principles:

- Army Regulation AR 165-1, § 16-2. ROA.11-12.

- Military Rule of Evidence 503. MIL. R. EVID. 503.

- The *Covenant and Code of Ethics for Chaplains of the Armed Forces* provides in part: "I will hold in confidence any privileged communication received by me during the conduct of my ministry. I will not disclose confidential communications in private or in public." ROA.11.

627 (5th Cir. Oct. 28, 2025). The parties filed Rule 28(j) letters explaining why *McRaney* bears directly on whether the ecclesiastical-abstention doctrine applies here. The panel opinion does not cite *McRaney*, discuss its holding, explain whether it applies, or determine if this case's dismissal is jurisdictional or on the merits.

*McRaney* clarified that ecclesiastical abstention (church autonomy), which is grounded in the First Amendment's Religion Clause and is a constitutional immunity from suit, *id.* at 633-34, 641, applies *only* when adjudication would require resolving questions of faith, doctrine, or church governance—not merely because a religious actor is involved.[3] *Id.* at 635-41. Whether Plaintiffs' negligence claim concerns secular conduct governed by neutral principles is the central issue on appeal. The panel's silence leaves unclear how *McRaney* was applied, if at all.

The district court dismissed this action under Rule 12(b)(1) without prejudice. ROA.210, 212. *McRaney* also clarified that

---

[3] Judge Ramirez dissented in *McRaney*, arguing that the plaintiff's claims did not invoke the ecclesiastical-abstention doctrine after a careful analysis of those claims. *Id.* at 655-62 (Ramirez, J., dissenting). Judge Ramirez's arguments merit consideration on rehearing.

ecclesiastical-abstention dismissal is not jurisdictional dismissal without prejudice in a narrower Rule 12(b)(1) sense but is a merits-based dismissal with prejudice. *Id.* at 645-47, 655 n.12. The panel opinion does not address the nature of the district court's dismissal.

The panel's summary affirmance cannot be reconciled with *Sanders* or this Court's recent decision in *McRaney*, which limit ecclesiastical abstention to disputes requiring *theological judgment*. If left unaddressed, the panel's affirmance materially expands church autonomy beyond its constitutional bounds and creates tension with binding precedent.

## II. The panel's decision conflicts with other circuits' decisions on the application of the *Feres* doctrine where the gravamen of the suit is the death or injury of a civilian.

Under the FTCA, "civilians [can] sue when injured by the military, even when the military is engaged in activity that no private individual is authorized to perform." *Carter v. United States*, 145 S. Ct. 519, 520 (Feb. 24, 2025) (Thomas, J., dissenting from denial of cert.) (citing *Indian Towing Co. v. United States*, 350 U.S. 61, 64–

69 (1955)). But under the much-maligned *Feres* doctrine,[4] the United States "is not liable under the [FTCA] for *injuries to servicemen* where the injuries arise out of or are in the course of activity incident to service." *Feres v. United States,* 340 U.S. 135, 146 (1950) (emphasis added).

"The *Feres* doctrine cannot be reduced to a few bright-line rules; *each case must be examined* in light of the statute as it has been construed in *Feres* and subsequent cases." *United States v. Shearer*, 473 U.S. 52, 57 (1985) (emphasis added); *see Brown v. United States*, 462 F.3d 609, 615 (6th Cir. 2006). *Feres* does not bar derivative injuries resulting from harm to a civilian—if the civilian's injury is separate or independent from the servicemember's injury, or if the servicemember is not injured, *Feres* does not apply, as held by other circuits. *Ortiz v. United States*, 786 F.3d 817, 831-32 (10th Cir. 2015);

---

[4] In 1987, Justice Scalia wrote in a dissent joined by three other justices that "*Feres* was wrongly decided and heartily deserves the 'widespread, almost universal criticism it has received.'" *United States v. Johnson*, 481 U.S. 681, 700 (1987) (Scalia, J., dissenting). More recently, Justice Thomas has urged overruling *Feres. Carter*, 145 S. Ct. at 519, 521, 524 (Thomas, J., dissenting from denial of cert.) ("[W]e should fix this mess that we have made. ... This Court should overrule *Feres*. ... There is near-universal consensus that the *Feres* doctrine is wrong on the law, incoherent in justification, and unjust in practice.").

*Brown*, 462 F.3d at 611; *Romero v. United States*, 954 F.2d 223, 225–26 (4th Cir. 1992); *see Stencel Aero Eng'g Corp. v. United States*, 431 U.S. 666, 673 (1977) (holding that third party's claim that was derivative of *servicemember's injury* was barred by *Feres*). The injury that is the basis for all Plaintiffs' claims in this case is an injury to a civilian—Steve Winder's fatal shooting death—not an injury to a servicemember. Therefore, *Feres* doesn't apply.

The district court barred this action under the *Feres* doctrine on the theory that a servicemember suffered an "injury to personhood," notwithstanding that the gravamen of the suit is the death of a civilian. ROA.208-210. The panel's affirmance leaves intact a rule that *Feres* bars civilian wrongful-death claims whenever a servicemember is emotionally affected. That approach conflicts with other circuits that have addressed *Feres* in the context of a civilian's injury and arguably conflicts with Supreme Court precedent focusing on the injury to a servicemember. It represents a substantial expansion of *Feres* with far-reaching consequences for FTCA litigation involving civilians.

### III. The panel's unreasoned decision presents recurring and unresolved questions of exceptional constitutional and institutional importance and an institutional consideration when the absence of reasoning frustrates further review and risks inconsistent application of constitutional doctrine in this Court and in lower courts.

The district court dismissed this action under Rule 12(b)(1) based on both ecclesiastical abstention and the *Feres* doctrine after extensive analysis. The panel opinion's absence of reasoning leaves critical doctrinal questions unanswered on the questions of first impression raised in this case.[5] Because the panel opinion does not identify the basis for affirmance, it leaves uncertainty regarding:

- whether ecclesiastical abstention applies after *McRaney*,

- how *Feres* applies when the direct injury sued on is the death of a civilian, and

- how district courts should analyze similar claims going forward.

Without clarification, these issues are likely to recur.

---

[5] The factual scenario in this case—suicide-intervention conduct by a military chaplain—appears to raise a question of first impression under ecclesiastical abstention. No similar case has been located. Likewise, no factually similar *Feres* doctrine case involving a civilian death has been located.

Plaintiffs challenged both specific legal conclusions, including the application of ecclesiastical abstention to the chaplain's suicide-intervention conduct and the application of *Feres* to a civilian death. The panel's affirmance does not address whether ecclesiastical abstention applies to secular suicide-intervention conduct, whether *Feres* can bar a wrongful-death claim where the decedent was a civilian, or whether the district court resolved factual inferences against Plaintiffs at the pleading stage.

This case presents recurring and unresolved questions of exceptional constitutional and institutional importance concerning:

- the interaction between the First Amendment and FTCA liability for government-employed clergy,

- the proper limits of the *Feres* doctrine, and

- the standards governing suicide-intervention conduct affecting civilians.

Absent clarification, district courts lack guidance in an area of law this Court has recently revisited.

Moreover, the absence of reasoning frustrates further review and risks inconsistent application of constitutional doctrine. While unpublished summary dispositions play an important role, their use here—after full briefing and argument on unsettled constitutional questions—leaves this Court's doctrine opaque and unsettled. En banc review would allow the Court to clarify the governing standards and ensure doctrinal coherence.

The Supreme Court and this Court[6] have recognized that while appellate courts retain discretion over whether to issue written opinions, unexplained dispositions can be inappropriate where they obscure the basis for decision on substantial federal questions addressed at length in the district court, thereby frustrating meaningful review and leaving lower courts without guidance. *Northcross v. Bd. of Educ. of Memphis City Schs.*, 412 U.S. 427, 427–29 (1973) (per curiam) (granting certiorari and remanding where circuit court summarily denied motion for award of attorneys' fees without reasoned opinion); *Taylor v. McKeithen*, 407 U.S. 191, 194–

---

[6] *United States v. Pajooh*, 143 F.3d 203, 204 (5th Cir. 1998).

95 & 195 n.4 (1972) (in legislative-reapportionment case raising substantial federal question, granting certiorari and remanding where circuit court summarily reversed without reasoned opinion on point that had been considered at length by district court, having "not had the benefit of the insight of the Court of Appeals"); *Carter v. Stanton*, 405 U.S. 669, 672 (1972) (noting three-judge district court's "order is opaque and unilluminating as to either the relevant facts or the law with respect to the merits of appellants' claim" and remanding).

The issues presented were fully briefed (including by *amici*), orally argued (including by *amici*), governed by existing precedent, and readily susceptible to reasoned resolution under the law asserted by the parties and *amici* and under intervening authority. This Court has recognized that summary dispositions are appropriate only where an opinion would have no precedential value and the issues presented are neither difficult nor unsettled. *NLRB v. Amalgamated Clothing Workers of Am., AFL–CIO, Loc. 990*, 430 F.2d 966, 971–72 (5th Cir. 1970).

The absence of reasoning prevents meaningful assessment of whether the correct legal standards were applied and leaves lower courts without guidance on recurring constitutional questions. This Court's own precedent likewise cautions that summary affirmance should not be used to dispose of cases involving novel or significant legal issues. *Amalgamated Clothing Workers*, 430 F.2d at 971–72.

Where, as here, the appeal presents intervening precedent and substantial federal questions concerning the scope of constitutional and jurisdictional doctrines, clarification of the grounds for decision is necessary to ensure consistency with governing law. And because affirmance of the district court could rest on the ecclesiastical-abstention doctrine, the *Feres* doctrine, or both,[7] meaningful review is hindered by the absence of a reasoned decision. *See Dart Cherokee Basin Oper. Co. v. Owens*, 574 U.S. 81, 86, 93, 95 n.7 (2014) (addressing Eighth Circuit's unreasoned decision denying permission to appeal remand order and noting caution "when attributing basis to an unreasoned decision.") (citing *Taylor*, 407 U.S. at 193 n.2).

---

[7] The district court dismissed the case on both doctrines. ROA.207, 210.

# Conclusion

Because this case presents conflicts with precedent and issues of exceptional importance that will recur, the Court should grant this petition for rehearing en banc.

Respectfully submitted,

CURNUTT & HAFER, LLP

By: _/s/ Stephen W. Kotara_
    Stephen W. Kotara
    Texas Bar No. 11693200
    Skotara@CurnuttHafer.com

    Douglas R. Hafer
    State Bar No. 00787614
    DHafer@CurnuttHafer.com

301 West Abram Street
Arlington, Texas 76010
(817) 548-1000 – Telephone
(817) 548-1070 – Facsimile

*ATTORNEYS FOR PLAINTIFFS-APPELLANTS*

## Certificate of Service

I certify that on January 26, 2026, this document was served by the Court's CM/ECF Document Filing System on Appellee's counsel:

Brian W. Stoltz
Assistant United States Attorney
U.S. Attorney's Office, Northern District of Texas
Dallas, Texas 75242

*ATTORNEYS FOR APPELLEE*

*/s/ Stephen W. Kotara*
Stephen W. Kotara

## Certificate of Compliance

This petition complies with the type-volume limitation of Rule 40(b)(1) because it contains 3,582 words, excluding the parts of the petition exempted by Rule 32(f) and Fifth Circuit Rule 32.2.

This petition also complies with the typeface requirements of Rule 32(A)(5) and the type requirements of Rule 32(A)(6) because this petition has been prepared in a proportionally spaced typeface using Microsoft Word with a 14-point font named Bookman Old Style in the text and with a 12-point font named Bookman Old Style in the footnotes.

*/s/ Stephen W. Kotara*
Stephen W. Kotara

**TAB 1**

# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 10, 2025

Lyle W. Cayce
Clerk

No. 25-10297

———————

Latrisha Winder, *Individually, as Next Friend of J.W., a minor, and as Personal Representative of* the Estate of Stephen Wayne Winder, *Deceased*; Lily Winder; Stephen Tyler Winder; Emma Winder; Lou Anne Phillips,

*Plaintiffs—Appellants*,

*versus*

United States of America,

*Defendant—Appellee.*

———————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 7:24-CV-83

———————————————

Before Higginbotham, Ho, and Douglas, *Circuit Judges.*

Per Curiam:[*]

Appellants, Latrisha Winder and various members of her family, brought suit under the Federal Tort Claims Act,[1] for negligence against the United States for Army Chaplain Johnson-Glassel's role in the death of her

———————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

[1] 28 U.S.C. § 1346(b)(1).

No. 25-10297

husband.  Appellants challenge the district court's dismissal of their claims on a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction under the ecclesiastical abstention doctrine and the *Feres*[2] doctrine.[3]

We review a Rule 12(b)(1) dismissal de novo.  *Mitchell v. Bailey*, 982 F.3d 937, 940 (5th Cir. 2020).  Plaintiffs bear the burden of proof as the party asserting jurisdiction.  *Id.*  Plaintiffs must establish by a preponderance of the evidence that the court has subject matter jurisdiction, and subject matter jurisdiction may be found on any of the following bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

We have carefully considered this appeal in light of the briefs, oral argument, and pertinent portions of the record on appeal.  Having done so, we AFFIRM.

---

[2] *Feres v. United States*, 340 U.S. 135 (1950).

[3] The district court did not reach Defendant's remaining 12(b)(1) argument for dismissal—that the claims were barred by sovereign immunity because there was no state-law corollary.

**TAB 2**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| **LATRISHA WINDER, ET AL.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| v. | § | Civil Action No. 7:24-CV-00083-O |
| | § | |
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **Defendant.** | § | |

## OPINION & ORDER

Before the Court are Defendant's Motion to Dismiss (ECF No. 7), filed August 16, 2024; Plaintiffs' Response (ECF No. 14), filed October 7, 2024; and Defendant's Amended Reply (ECF No. 16), filed October 21, 2024. The Motion is ripe for this Court's review. For the reasons set forth herein, the Court **GRANTS** Defendant's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1).

## I.    BACKGROUND[1]

On June 27, 2021, Steve Winder ("Winder") and his family members were swimming in Winder's pool. Winder, who had been drinking, accidentally got into the pool with his cell phone. Winder went inside his home and charged an old phone that belonged to his wife Latrisha ("Latrisha"), who had recently joined the United States Army National Guard in Fort Lee, Virginia. Winder discovered Facebook messages on Latrisha's phone between Latrisha and her ex-husband. In the messages, Latrisha's ex-husband expressed a desire to reconcile with Latrisha. Latrisha declined her ex-husband's overture but never told Winder about these messages. Winder,

---

[1] Unless otherwise cited, the Court's recitation of the facts is taken from Plaintiffs' Complaint. *See* Pls.' Compl., ECF No. 1.

25-10297.194

presumably upset about the messages, took Latrisha's phone next door to his mother-in-law's, Lou Anne Phillips ("Mrs. Phillips"), house.  Mrs. Phillips pointed out that the messages indicated Latrisha did not want to get back together with her ex-husband.  Winder agreed and went back to his house.

Later that day, Latrisha—who was in Virginia at the time—sent Mrs. Phillips text messages expressing concern for Winder because she could not reach him and because he had a history of excessive drinking and mental illness.  Mrs. Phillips went to Winder's house to check on him and then returned home.

That same evening, Winder sent Latrisha text message photos of him "with a handgun under his chin and to his head."[2]  Winder also sent text messages "stating that he could not bear it anymore."[3]  Latrisha, distressed over Winder's infidelity accusation and apparent suicide threat, asked her sergeant if she could see an Army Chaplain.  The Army Chaplain Corps "is a special branch of the Army whose mission is to provide for the comprehensive religious support to the Army across the spectrum of operations."[4]  Army Chaplains are extensively trained "in suicide prevention and intervention for both service-members and their families."[5]  Latrisha sought "both spiritual and secular advice about [Winder's] accusations and apparent suicide threat."[6]

Chaplain Keven Johnson-Glassel ("the Chaplain") met with Latrisha in a private meeting room.  Concerning Winder's infidelity accusation, the Chaplain counseled Latrisha "spiritually."[7]  As to Winder's apparent suicide threat, the Chaplain advised Latrisha to call local law enforcement and request them to conduct a welfare check on Winder.

---

[2] Pls.' Compl. ¶ 23, ECF No. 1.
[3] *Id.*
[4] *Id.* ¶ 17 (quoting *Chaplain Corps*, § 39-1.a. (June 1, 2017)).
[5] *Id.* ¶ 18.
[6] *Id.* ¶ 23.
[7] *Id.* ¶ 24.

25-10297.195

At around 7:00 p.m. that night, Latrisha called Mrs. Phillips.  The Chaplain was also on the call.  Latrisha told Mrs. Phillips that Winder had sent her photos of a handgun under his chin and to his head, stating that "he could not bear it anymore."[8]  Latrisha also relayed to Mrs. Phillips that the Chaplain wanted her to have law enforcement do a welfare check on Winder.  Latrisha expressed to both Mrs. Phillips and the Chaplain "that she did not think it was a good idea to have law enforcement check on [Winder]."[9]  Mrs. Phillips agreed and told Latrisha and the Chaplain that a welfare check would "not bode well."[10]  The Chaplain responded that he would call law enforcement if Latrisha did not.  As a result, Latrisha called the Young County Sherriff's Office against her wishes and asked them to conduct a welfare check on Winder.  The dispatcher noted that Winder had a gun and had sent Latrisha a photo of himself holding the gun while saying "he could not bear it anymore."[11]

Young County Sheriff Deputies Joshua Gallardo ("Deputy Gallardo") and Simon Dwyer ("Deputy Dwyer") were dispatched to Winder's home.  Deputies Gallardo and Dwyer drove separate vehicles.  Deputy Gallardo arrived at the home first.  At this time, Mrs. Phillips was with Winder in his bedroom.  After realizing that Deputy Gallardo was outside the door, Mrs. Phillips tried to retrieve the gun from Winder.  But this upset Winder.  He responded "I don't give a [expletive].  This is my home."[12]

Deputy Gallardo opened the front door, announcing himself with "Hello, Sherriff's Office," and yelling for "Steve."[13]  Mrs. Phillips simultaneously opened the bedroom door, calmly

---

[8] *Id.* ¶ 23.
[9] *Id.* ¶ 25.
[10] *Id.*
[11] *Id.*
[12] *Id.* ¶ 36 (alteration in original).
[13] *Id.* ¶ 40.

25-10297.196

answered "We're right here. Can I help you?"[14] Shortly thereafter, Mrs. Phillips saw Winder get up from his chair and walk toward the doorway with the gun. Mrs. Phillips told Winder to "put it up," and then told Deputy Gallardo, "He's got a gun."[15] After this, Deputy Gallardo said on his radio, "He's got a gun. He's got a gun" and "Put it down, man. Put it down."[16] Deputy Gallardo then fired one shot from his handgun that fatally hit Winder in the chest as he was standing next to the bedroom doorway.

Deputy Dwyer arrived on the front porch about forty seconds after Deputy Gallardo shot Winder. Deputy Dwyer spoke with Mrs. Phillips, who was on Facetime with Latrisha, and said, "I apologize I couldn't have got here any quicker than I did."[17]

On June 3, 2024, Latrisha, individually and as the Personal Representative of Winder's estate; Winder and Latrisha's four children; and Mrs. Phillips (collectively, "Plaintiffs") filed this action under the Federal Tort Claims Act ("FTCA") against Defendant United States of America. In their Complaint, Plaintiffs assert a single cause of action for negligence. Defendant filed a Motion to Dismiss Plaintiffs' Complaint for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1), or, alternatively, for failure to state a claim under Rule 12(b)(6).[18] Defendant's Motion is now ripe for the Court's review.

## II. LEGAL STANDARD

Federal courts are courts of limited jurisdiction and must have "statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Generally, the party invoking jurisdiction bears the burden of

---

[14] *Id.*
[15] *Id.* ¶¶ 41, 43.
[16] *Id.* ¶ 44.
[17] *Id.* ¶ 47.
[18] Def.'s Mot. to Dismiss 2, ECF No. 7.

4

demonstrating that jurisdiction exists. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981) (explaining that the plaintiff "has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction"). "[N]o presumptive truthfulness attaches to the plaintiff's allegations, and the court can decide disputed issues of material fact in order to determine whether or not it has jurisdiction to hear the case." *Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004).

Defendants may challenge a court's authority to hear a dispute under Federal Rules of Civil Procedure Rule 12(b)(1). *See* FED. R. CIV. P. 12(b)(1). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3). Courts may dismiss for lack of subject matter jurisdiction on any of three separate grounds: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Kling v. Hebert*, 60 F.4th 281, 284 (5th Cir. 2023) (internal quotation marks and citation omitted). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

Generally, when a Rule 12(b)(1) motion is brought with other Rule 12 motions to dismiss, the Rule 12(b)(1) motion must be addressed first. *See id.* ("When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits.").

Thus, the Court analyzes Defendant's Rule 12(b)(1) Motion separately before analyzing Defendant's Rule 12(b)(6) Motion. Because the Court finds two of the three grounds for dismissal under Rule 12(b)(1) are meritorious, the Court does not analyze the other nor Defendant's Rule 12(b)(6) Motion.

25-10297.198

### III.    ANALYSIS

In its Motion to Dismiss, Defendant advances numerous legal theories arising under Rule 12(b)(1), arguing the Court should dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction.[19]   The Court only addresses Defendant's arguments relating to the ecclesiastical abstention doctrine and the *Feres* doctrine.

### A.    Ecclesiastical Abstention Doctrine

The first of Defendant's Rule 12(b)(1) arguments pertains to the ecclesiastical abstention doctrine.[20]   Specifically, Defendant contends that Plaintiffs' negligence cause of action focuses on clergy malpractice, which under Texas law[21] has been repeatedly rejected because it would require this Court's unconstitutional review of ecclesiastical matters.[22]   By contrast, Plaintiffs respond that the gravamen of their claim is that the Chaplain, "an Army officer trained in suicide prevention and intervention, undertook to provide *secular* advice to Latrisha about how to handle [Winder's] suicide threat and that he did so negligently."[23]   The Court agrees with Defendant.

"The First Amendment does not categorically insulate religious relationships from judicial scrutiny, for to do so would necessarily extend constitutional protection to the secular components of these relationships."   *Sanders v. Casa View Baptist Church*, 134 F.3d 331, 335–36 (5th Cir. 1998).   "Instead, the Free Exercise Clause protects religious relationships, including the counseling relationship between a minister and his or her parishioner, primarily by preventing the judicial resolution of ecclesiastical disputes turning on matters of religious doctrine or practice."   *Id.* at 336 (internal quotation marks and citation omitted).

---

[19] *Id.* at 9–21.
[20] *Id.* at 9–12.
[21] In FTCA cases, federal courts apply "the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  The parties do not dispute that Texas law applies to this action.
[22] Def.'s Mot. to Dismiss 9–11, ECF No. 7.
[23] Pls.' Resp. to Def.'s Mot. to Dismiss 12, ECF No. 14 (emphasis added).

25-10297.199

Under Texas law, "[t]he ecclesiastical abstention doctrine prohibits civil courts from delving into matters of 'theological controversy, church discipline, ecclesiastical government, or the conformity of the members of the church to the standard of morals required of them.'" *In re Lubbock*, 624 S.W.3d 506, 508–09 (Tex. 2021) (quoting *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 714 (1976)). "The doctrine is grounded in the First Amendment, which protects the right of religious institutions 'to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine.'" *Id.* at 509 (quoting *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church*, 344 U.S. 94, 116 (1952)).

"The First Amendment does not bar all claims against religious bodies, though." *Id.* at 513. Indeed, "[a] court may exercise jurisdiction over a controversy if it can apply neutral principles of law that will not require inquiry into religious doctrine, interference with the free-exercise rights of believers, or meddling in church government." *Id.* "In determining whether the ecclesiastical abstention doctrine applies, courts must analyze whether a particular dispute is 'ecclesiastical' or simply a civil law controversy in which [religious] officials happen to be involved." *In re St. Thomas High Sch.*, 495 S.W.3d 500, 508 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (quoting *Shannon v. Mem'l Drive Presbyterian Church U.S.*, 476 S.W.3d 612, 622 (Tex. App.—Houston [14th Dist.] 2015, pet. denied)). "To resolve this issue, courts must look to the *substance and effect* of a plaintiff's complaint to determine its ecclesiastical implication." *Shannon*, 476 S.W.3d at 622 (emphasis added).

Importantly, "any exception to ecclesiastical abstention by application of neutral principles must be *narrowly drawn* to avoid inhibiting the free exercise of religion or imposing secular interests on religious controversies." *In re Lubbock*, 624 S.W.3d at 513 (emphasis added); *see also C.L. Westbrook, Jr. v. Penley*, 231 S.W.3d 389, 398–99 (Tex. 2007) (explaining that "the

7

neutral-principles approach" has rarely been expanded beyond the church "property-ownership context"). "However, if the matter cannot be determined by the court without resolving a religious controversy," the doctrine does not apply. *Shannon*, 476 S.W.3d at 622.

Plaintiffs argue the Chaplain negligently undertook to provide *secular*, not religious, advice to Latrisha pertaining to Winder's alleged suicide threat, thus removing their negligence claim from the purview of the ecclesiastical abstention doctrine.[24]   The "substance and effect" of Plaintiffs' Complaint demonstrates otherwise, though. *Id.*  As a conclusion, the Complaint asserts that "Latrisha wanted to speak to a chaplain for both spiritual and *secular* advice about [Winder's] accusations and apparent suicide threat."[25]  Plaintiffs fail to provide factual allegations however to substantiate their proposition that Latrisha's encounter with the Chaplain as to Winder's alleged suicide threat was not rooted in his religious beliefs.

The Complaint's only other reference to the Chaplain's alleged secular advice states, in a conclusory fashion, that the Chaplain "undertook the rendering of spiritual and *secular* services and advice to Latrisha."[26]  Otherwise the Complaint's factual allegations make clear that the Chaplain was a "spiritual advisor"[27] to Latrisha and that during their interactions, the Chaplain "address[ed] [Latrisha's] spiritual needs"[28] and "counseled her spiritually."[29]  Indeed, an Army Chaplain Corps document states that the mission of the Army Chaplain Corps "is to provide for the comprehensive *religious support* to the Army."[30]

---

[24] *Id.*
[25] Pls.' Compl. ¶ 23, ECF No. 1 (emphasis added).
[26] *Id.* ¶ 69 (emphasis added).
[27] *Id.* ¶ 20 (quoting Dep't of the Army, Army Regulation 165-1 § 16-2 (Mar. 5, 2024), https:// armypubs.army.mil/epubs/DR_pubs/DR_a/ARN32960-AR_165-1-000-WEB-1.pdf).
[28] *Id.* ¶ 24.
[29] *Id.*
[30] *Id.* ¶ 17 (emphasis added) (quoting *Chaplain Corps*, § 39-1.a. (June 1, 2017)).

25-10297.201

In their Response, Plaintiffs explain that Army Chaplains are trained in suicide prevention, which they contend is secular in nature and cite to the Army's suicide training pamphlet.[31]  This suicide training pamphlet, though, explains that "Chaplains provide Family Life Ministry to Soldiers and Family Members to establish and maintain personal and *spiritual* health, and build or restore healthy relationships."[32]  It also instructs that a chaplain's purpose is to "[a]dvise commanders on *moral* and *ethical* issues and other stress factors that may result in an increased risk" for suicide.[33]  Tellingly, the pamphlet says, "Chaplains, chaplain assistants, and civilians who work in support of the Chaplain Corps provide comprehensive *religious* support services that are designed to enhance resilience and readiness."[34]

Contrary to Plaintiffs' argument, this action is not "simply a civil dispute in which a religious official happens to be involved."[35]  Based on the Complaint's allegations and its reference to Army regulations and training materials, Plaintiffs have failed to allege facts showing that this action "entails[] no inquiry into [the Chaplain's] religious doctrine."  *C.L. Westbrook, Jr.*, 231 S.W.3d at 399.

Plaintiffs cite three cases involving the ecclesiastical abstention doctrine, which they contend "illustrate that Plaintiffs' action is not barred."[36]  *See Sanders*, 134 F.3d 331; *McRaney v. N. Am. Mission Bd.*, 966 F.3d 346 (5th Cir. 2020); *C.L. Westbrook, Jr.*, 231 S.W.3d 389.  The Court disagrees.  In *Sanders*, the Fifth Circuit declined to apply the ecclesiastical abstention

---

[31] Pls.' Resp. to Def.'s Mot. to Dismiss 17, ECF No. 14 (citing Dep't of the Army, Health Promotion, Risk Reduction, and Suicide Prevention (Apr. 14, 2015), https://www.army.mil/e2/downloads/rv7/r2/policydocs/p600_24.pdf).

[32] Dep't of the Army, Health Promotion, Risk Reduction, and Suicide Prevention § 8-4 (Apr. 14, 2015), https://www.army.mil/e2/downloads/rv7/r2/policydocs/p600_24.pdf (emphasis added).

[33] *Id.* § 2-13 (emphasis added).

[34] *Id.* § 2-7 (emphasis added).

[35] Pls.' Resp. to Def.'s Mot. to Dismiss 17, ECF No. 14.

[36] *Id.* at 14–17.

25-10297.202

doctrine to a sexual misconduct claim against a minister. 134 F.3d at 338. The court explained that because the minister "held himself out as possessing the education and experience of a professional marriage counselor" and "entered into a fiduciary relationship with the plaintiffs," the doctrine did not apply. *Id.* at 337. Moreover, the court determined "the activities complained of by the plaintiffs"—the minister's sexual misconduct—"were not part of his religious beliefs and practices." *Id.* at 338.

That is not the case here. The Army Chaplain Corps document mandates the Chaplain to provide "*religious* support."[37] Indeed, Latrisha specifically sought "spiritual" advice.[38] Plaintiffs and the Chaplain did not enter into a fiduciary relationship. And it is not obvious from the face of the Complaint that the Chaplain's advice regarding Winder's suicide threat was not rooted in his faith or religious doctrine.

Turning to *McRaney*, the Fifth Circuit there held it was too early in litigation to determine whether the plaintiff's allegations would "require the court to address purely ecclesiastical questions." 966 F.3d at 349. The court reasoned the plaintiff's "complaint ask[ed] the court to apply neutral principles of tort law to a case that, on the face of the complaint, involve[d] a civil rather than religious dispute." *Id.* Here, though, Plaintiffs' Complaint does not solely allege a secular civil dispute; instead, it describes a dispute grounded in the Chaplain's duty to provide religious support to service members. The Court acknowledges that Plaintiffs' Response contends they "are not suing for bad spiritual advice" but are instead suing for the Chaplain's "bad secular advice on handling [Winder's] suicide threat—advice that ended up getting [Winder] killed."[39] Plaintiffs rely however on the Complaint's conclusory statements that the Chaplain provided

---

[37] Pls.' Compl. ¶ 17, ECF No. 1 (emphasis added) (quoting *Chaplain Corps*, § 39-1.a. (June 1, 2017)).
[38] *Id.* ¶ 23.
[39] Pls.' Resp. to Def.'s Mot. to Dismiss 17, ECF No. 14.

25-10297.203

purely secular advice as to Winder's suicide threat and fail to substantiate this proposition with factual allegations. Instead, the Complaint's factual allegations indicate the Chaplain's interactions with Latrisha, including his suicide advice, was rooted in his religious duties.

Finally, in *C.L. Westbrook, Jr.*, the Texas Supreme Court applied the ecclesiastical abstention doctrine to the plaintiff's numerous claims, including defamation and negligence, against the defendant pastor. 231 S.W.3d at 391–92. The plaintiff urged the court not to apply the doctrine because it should "not shield a licensed professional counselor from liability that arises from a secular counseling relationship simply because scripture might occasionally be discussed." *Id.* at 396. The plaintiff argued it was the defendant pastor's breach of a secular duty of confidentiality that caused her injury. *Id.* at 398. To that end, the plaintiff contended that for the court to decide "whether [defendant] breached a secular duty of confidentiality as a licensed professional counselor would not, according to [the plaintiff], require resolution of a theological matter." *Id.* The Texas Supreme Court rejected this argument. It reasoned it could be "theoretically true" that a court could determine whether the defendant "breached a secular duty of confidentiality without having to resolve a theological question." *Id.* at 397. But this inquiry would not answer whether "doing so would unconstitutionally impede the church's authority to manage its own affairs." *Id.*

And such is the case here. Plaintiffs argue the Chaplain threatened to breach his duty of confidentiality by telling Latrisha "he would call law enforcement if she did not call,"[40] which they contend "is wholly secular and a neutral principle that the Court can apply without inquiring into and applying [the Chaplain's] religious training, faith, and beliefs."[41] To support this argument,

---

[40] Pls.' Compl. ¶ 25, ECF No. 1
[41] Pls.' Resp. to Def.'s Mot. to Dismiss 18, ECF No. 14.

25-10297.204

Plaintiffs cite Army regulations detailing a Chaplain's duty of confidentiality.[42]  But those regulations say that "[a] communication is 'confidential' if made to a chaplain in the chaplain's capacity as a *spiritual advisor*."[43]  And the Complaint explicitly states the Chaplain counseled Latrisha "spiritually."[44]  Accordingly, Plaintiffs have pled no facts describing a secular encounter with the Chaplain.

Plaintiffs even admit "the only evidentiary component of Plaintiffs' negligence claim that touches on *religion* is [the Chaplain's] duty of confidentiality that he threatened to breach to coerce Latrisha."[45]  The existence of this tension—whether the Chaplain's duty of confidentiality is religious or secular in nature—is precisely why free exercise principles mandate the Court abstain from adjudication here.  Indeed, "[i]t is a core tenet of First Amendment jurisprudence that, in resolving civil claims, courts must be careful not to intrude upon internal matters of" religious doctrine.  *Id.* at 397.  It is not for the Court to adjudicate, or even question, the Chaplain's duty of confidentiality, given that Plaintiffs have admitted, and Army regulations make clear, there is a religious component to this inquiry.

The plaintiff in *C.L. Westbrook, Jr.* also urged the Texas Supreme Court "to apply the neutral-principles approach to her professional-negligence claim, contending her claim [could] be resolved under neutral tort principles without resorting to or infringing upon religious doctrine." *Id.* at 399.  Again, the court rejected the plaintiff's argument.  It acknowledged that the plaintiff "pin[ned] [the defendant's] liability in this case, at least in part, on his breach of a secular duty."

---

[42] *Id.* at 17–18 (citing Dep't of the Army, Army Regulation 165-1 § 16-2 (Mar. 5, 2024), https://armypubs.army.mil/epubs/DR_pubs/DR_a/ARN32960-AR_165-1-000-WEB-1.pdf); Pls.' Compl. ¶ 20, ECF No. 1 (citing Dep't of the Army, Army Regulation 165-1 § 16-2 (Mar. 5, 2024), https://armypubs.army.mil/epubs/DR_pubs/DR_a/ARN32960-AR_165-1-000-WEB-1.pdf).
[43] Dep't of the Army, Army Regulation 165-1 § 16-2 (Mar. 5, 2024), https://armypubs.army.mil/epubs/DR_pubs/DR_a/ARN32960-AR_165-1-000-WEB-1.pdf.
[44] Pls.' Compl. ¶ 24, ECF No. 1.
[45] Pls.' Resp. to Def.'s Mot. to Dismiss 17, ECF No. 14 (emphasis added).

*Id.* at 400.  But the court held this alleged breach could not be determined "without examining what effect the imposition of damages would have on the inherently religious function of church discipline."  *Id.*  A significant component of Plaintiffs' negligence claim here is the Chaplain's threatened breach of his duty of confidentiality to Latrisha.[46]  Because there is no doubt the facts included in the Complaint show the Chaplain serves an inherently religious function within the Army,[47] imposing damages in this case, like in *C.L. Westbrook, Jr.*, would impinge on the Chaplain's religious function and ability to counsel spiritually.  *See id.* ("[W]hile the elements of [the plaintiff's] professional-negligence claim can be *defined* by neutral principles without regard to religion, the *application* of those principles . . . would impinge upon [the church's] ability to manage its internal affairs." (emphasis in original)).

Plaintiffs attempt to distinguish the court's reasoning in *C.L. Westbrook, Jr.* by arguing that the Chaplain "owed Latrisha a duty of confidentiality, but he owed no one a religious obligation to disclose [Winder's] suicide threat."[48]  The Texas Supreme Court, though, cautioned that "[i]f civil courts undertake to resolve essentially religious controversies, the hazards are ever present of inhibiting the free development of religious doctrine and of implicating secular interests in matters of purely ecclesiastical concern . . ."  *Id.* (alteration in original) (internal quotation marks and citation omitted).  The Court cannot attempt to navigate the hazards implicated in the instant case.

---

[46] Pls.' Compl. ¶ 72, ECF No. 1 (The Chaplain committed "a wrongful threat to breach his duty of confidentiality to Latrisha and therefore an abuse and misuse of his chaplaincy power and authority.").

[47] *Id.* ¶ 17 ("The Army Chaplain Corps 'is a special branch of the Army whose mission is to provide for the comprehensive religious support to the Army across the spectrum of operations.'" (quoting *Chaplain Corps*, § 39-1.a. (June 1, 2017))).

[48] Pls.' Resp. to Def.'s Mot. to Dismiss 16, ECF No. 14.

25-10297.206

In sum, the Court concludes the ecclesiastical abstention doctrine applies to Plaintiffs' negligence cause of action. Accordingly, the Court **GRANTS** Defendant's Motion to Dismiss Plaintiff's Complaint for lack of subject matter jurisdiction on this ground.[49]

### B.    The *Feres* Doctrine

Defendant also argues the Court lacks subject matter jurisdiction over this action under the *Feres* doctrine, which bars suits based on accidents incident to military service.[50] Plaintiffs respond the doctrine does not apply because Latrisha and her family members suffered injuries that are derived solely from Winder's death.[51] Plaintiffs' arguments fail; the Court agrees with Defendant.

"The United States may be sued only to the extent that it waives its sovereign immunity." *Davis v. United States*, 961 F.2d 53, 56 (5th Cir. 1991). The United States through the FTCA "waive[s] its sovereign immunity in certain specified classes of tort claims." *Id.* But the Supreme Court has held that the FTCA's waiver does not extend to "injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Feres v. United States*, 340 U.S. 135, 146 (1950). This is known as the *Feres* Doctrine, and in the Fifth Circuit, it "bars all lawsuits based on injuries incident to military service." *Morris v. Thompson*, 852 F.3d 416, 420 (5th Cir. 2017). This includes state law claims and suits brought by military family members. *Id.*; *United States v. Johnson*, 481 U.S. 681, 687–88 (1987). "Claims barred under the *Feres* doctrine

---

[49] The Fifth Circuit has stated "it is somewhat unclear whether the ecclesiastical abstention doctrine serves as a jurisdictional bar requiring dismissal under Fed. R. Civ. P. 12(b)(1) or an affirmative defense requiring dismissal under Fed. R. Civ. P. 12(b)(6)." *McRaney*, 966 F.3d at 348 n.1. The court declined to "resolve this uncertainty." *Id.* The Court construes the doctrine's application here as a Rule 12(b)(1) jurisdictional bar.

[50] Def.'s Mot. to Dismiss 15–21, ECF No. 7.

[51] Pls.' Resp. to Def.'s Mot. to Dismiss 22–24, ECF No. 14.

are appropriately dismissed for want of jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Chandler v. United States*, 713 F. App'x 251, 253 (5th Cir. 2017).

To determine whether an injury was incident to military service, courts in this circuit consider: "(1) the duty status of the service member; (2) the place where the injury occurred; and (3) the activity in which the service member was engaged at the time of the injury." *Morris*, 852 F.3d at 421.

The Court first examines whether the *Feres* doctrine bars Latrisha's claims. There is no dispute Latrisha maintained active-duty status during all relevant events alleged in the Complaint.[52] And she suffered an injury to her personhood as a result of the Chaplain's threatened breach of his duty of confidentiality to her while she was on base in Fort Lee, Virginia.[53] Finally, Latrisha was engaged in conversations with the Chaplain—seeking his religious counseling and advice—when her injuries took place. Though this may be what Defendant acknowledges as, "a personal, non-military, matter," it does not preclude application of the *Feres* doctrine.[54] Tellingly, Latrisha "was both on active duty status and on the premises of the [Army base] at the time of the accident." *Mason v. United States*, 568 F.2d 1135, 1136 (5th Cir. 1978). And "[w]hile on active duty and on the base, [Latrisha] was still subject to all military regulations and discipline and was readily available for emergency service or temporary duties." *Id.* Indeed, it was the military that employed the Chaplain and because of her military status, Latrisha could take advantage of his services. Consequently, the Court concludes the *Feres* doctrine applies to Latrisha because the injury to her personhood caused by the Chaplain's threatened breach of his duty of confidentiality was incident to military service, thereby barring her claims in this action. *See id.*

---

[52] Pls.' Compl. ¶ 12, ECF No. 1.
[53] *Id.* ¶¶ 12, 24, 71, 73.
[54] Def.'s Mot. to Dismiss 16, ECF No. 7.

25-10297.208

Now, the Court considers whether the family members' claims are also barred. Plaintiffs specifically contend Mrs. Phillips's bystander injury, Winder's survival injuries, and the wrongful-death injuries of Winder's children are not derivative of Latrisha's in-service injury. And, by their logic, the *Feres* doctrine would not preclude their claims. The Court is not persuaded.

Courts have broadened the *Feres* doctrine and "have widely ruled that FTCA relief is *not* available to family members for claims based on the injuries to their relatives in the armed forces." *Gaspard v. United States*, 713 F.2d 1097, 1102 (5th Cir. 1983) (emphasis added) (collecting cases). "This is true even when the claims of the family members are independent of the serviceman's cause of action under applicable state law," such as here. *Id.* The Fifth Circuit has clarified that if "a *crucial* element" of the family members' claim "is the in-service injury inflicted on" the service member, their claims "*must*" be barred under the *Feres* doctrine. *Id.* (emphasis added). The broad reach of this doctrine stems from "the need to avoid the *inquiry* into military orders, and not the *consequences* of the inquiry, that justifies the military exclusion from the FTCA." *Id.* (emphasis in original).

The Court concludes the family members' claims here are barred under the *Feres* doctrine. Plaintiffs contend that under the "genesis test," the family members' claims are not derivative of Latrisha's in-service injury.[55] The Court rejects this argument. "[T]he genesis test asks whether the civilian injury has its origin in an incident-to-service injury to a service member." *Ortiz v. United States ex rel. Evans Army Cmty. Hosp.*, 786 F.3d 817, 824 (10th Cir. 2015). If so, "then *Feres* applies as a bar to the third-party claim, just as it would to a claim by the service member for his or her injuries." *Id.* Tellingly, a "clear-cut application of the genesis test occurs when the relative of a service member sues for loss of consortium or mental anguish when the government

---

[55] *Id.* at 21–22.

16

25-10297.209

negligently causes the service member's death or *injury*." *Id.* at 825 (emphasis added). To be clear, "these claims are 'ancillary or derivative to an injury to a serviceman incident to military service' and thus cannot proceed under *Feres*." *Id.* (quoting *Lombard v. United States*, 690 F.2d 215, 226 (D.C. Cir. 1982)); *see also Duncan v. Peters*, 190 F.3d 538 (5th Cir. 1999) (explaining that when "the military act[s] toward the service member but cause[s] injury to the service member's dependents[,]" *Feres* doctrine bars the claim).

Here, the family members' injuries, including those for pecuniary loss, loss of companionship, and mental anguish,[56] had their genesis in Latrisha's in-service injury.[57] Indeed, the "crucial element" of their claims involves and stems from the Chaplain's threatened breach of his duty of confidentiality which injured Latrisha's personhood.[58] *Gaspard*, 713 F.2d at 1102; *see also Ortiz*, 786 F.3d at 831 ("When we weigh all of the competing evidence, and view it in the light most favorable to plaintiff, we find that the injuries that [the service member's child] sustained forming the basis of the complaint are derivative of the injuries to her mother, [the service member].").

In sum, the Court concludes the claims of every Plaintiff in this action are barred under the *Feres* doctrine. The Court thus **GRANTS** Defendant's Motion to Dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction on this ground.

## IV.    CONCLUSION

For the reasons explained, the Court **GRANTS** Defendant's Motion to Dismiss under Rule 12(b)(1). Accordingly, the Court **DISMISSES** this action without prejudice. Separate final judgment shall issue from the date of this Order.

---

[56] Pls.' Compl. ¶ 75, ECF No. 1.
[57] *Id.* ¶ 73 (The Chaplain's "breaches were a proximate cause of [Winder's] shooting death and Plaintiffs' injuries and damages.").
[58] *Id.* ¶ 71.

25-10297.210

**SO ORDERED** on this **17th day** of **January, 2025**.

Reed O'Connor
UNITED STATES DISTRICT JUDGE

**TAB 3**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| **LATRISHA WINDER, ET AL.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| v. | § | **Civil Action No. 7:24-CV-00083-O** |
| | § | |
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **Defendant.** | § | |

## FINAL JUDGMENT

Having determined that dismissal is appropriate in this case, the Court now enters this Final

Judgment pursuant to Federal Rule of Civil Procedure 58(a). Therefore,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that:

1. All claims asserted by Plaintiffs against Defendant in this matter are **DISMISSED without**

   **prejudice** to the refiling of the same.

2. Any other relief not expressly provided for herein is hereby **DENIED**.

   **SO ORDERED** on this **17th day** of **January, 2025**.

Reed O'Connor

**UNITED STATES DISTRICT JUDGE**